MRS. ANNIE MORGAN HARRIS *v.* J. WADE MORGAN *et al.*\*

(*Nashville.* December Term, 1927.)

Opinion filed June 16, 1928.

1. STATUTE OF FRAUDS. PAROL CONTRACT INVOLVING REAL ESTATE. PART PERFORMANCE. COMMON LAW. RULE IN TENNESSEE.

While the rule at common law is that part performance of a parol contract whereby one person for a certain consideration agrees to will another a farm, will take the contract out of the operation of the Statute of Frauds, it is held in this State that partial performance of a parol contract for the sale and conveyance of land will not relieve from the application of the statute. (Post, p. 147.)

Citing: Goodloe v. Goodloe, 116 Tenn. (8 Cates), 252; Patton v. McClure, 8 Tenn. (Martin & Yerger), 333.

2. STATUTE OF FRAUDS. WILLS. SPECIFIC PERFORMANCE.

A contract, properly evidenced by writing, as required by the Statute of Frauds, whereby a person agrees to make a will in a certain way, or to devise property to a certain beneficiary, is valid and binding, and may be specifically enforced. (Post, p. 147.)

Citing: Starnes v. Hatcher, 121 Tenn. (13 Cates), 330.

3. PAROL CONTRACTS FOR SALE OR DISPOSITION OF LAND. VOIDABLE. STATUTE OF FRAUDS.

Parol contracts for the sale or disposition of land are not void, as against public policy, but are only voidable at the instance of the person against whom such contract is invoked. (Post, p. 148.)

Citing: Brakefield v. Anderson, 87 Tenn. (3 Pick.), 206; Choate v. Sewell, 142 Tenn. (15 Thomp.), 487.

4. STATUTE OF FRAUDS. NATURE AND CHARACTER OF WRITING.

It is not essential that the contract of sale shall be in writing, provided there is produced a writing containing the terms of the

oral contract, and authenticated by the signature of the party to be charged. (Post, p. 148.)

Citing: Lee v. Cherry, 85 Tenn. (1 Pick.), 707, 708.

### 5. STATUTE OF FRAUDS. PURPOSE AND REASON. PAROL EVIDENCE OF CONSIDERATION.

The Statute of Frauds was, obviously, designed to protect the owners of land from being drawn into hasty or inconsiderate agreements in relation to what is deemed the more valuable and important species of property, and to guard against misunderstanding as to the nature and extent of such agreements; and the consideration is not to be regarded, in construing the statute, as part of the contract, but merely as inducement to it. And therefore no principle of the law is violated by the admission of parol evidence of the consideration, whenever it becomes necessary to be shown; but in order to bind one as to the sale or disposition of land, it is necessary that the fact that a contract was made be evidenced by a writing setting forth its terms, signed by the person to be charged. (Post, p. 148.)

Citing: Sheid v. Stamps, 34 Tenn. (2 Sneed), 172.

### 6. STATUTE OF FRAUDS. WILLS. SEPARATE WILLS CONSTRUED TOGETHER.

Where it appears that four tenants in common each made a separate will, in the same terms, involving the property so held, in determining whether the written will of each of the three other tenants in common evidences the fact that a contract had been entered into by them and the other tenant in common, the father of complainant, her brothers and sisters, whereby the will of each was written and executed, it seems to us proper to consider the circumstances under which each of the four wills was prepared and executed as disclosed by the averments of the original bill; and it appearing that the four wills were executed simultaneously, at the same place, and were witnessed by the same persons, they manifest a joint purpose, which could not be consummated except through the co-operation and agreement of the four parties in interest,—that their joint property be held intact until the death of the survivor, and then be distributed among the children of one of them; the four wills must necessarily

be considered as a part of the same transaction, to the same extent as if executed on one sheet of paper, and be construed and considered together and not each one separately. (Post, p. 148.)

Citing: 25 R. C. L., 680-681; Anderson v. Anderson, 181 Iowa, 578; Beckwith v. Talbot, 95 U. S., 289, 24 L. Ed., 496; White v. Breen, 106 Ala., 169, 32 L. R. A., 127; Shelinsky v. Foster, 87 Conn., 90, 87 Atl., 25 Ann. Cas. 1914C, 1007; Lee v. Butler, 167 Mass., 426, 57 Am. St. Rep., 466; Flegel v. Dowling, 54 Ore., 40, 19 Ann. Cas., 1159; Nickerson v. Weld, 204 Mass., 346, 90 N. E. 589.

7. STATUTE OF FRAUDS. COLLATERAL PAPERS.

It is undoubtedly a general rule that collateral papers, adduced to supply the defects of signature to a written instrument under the Statute of Frauds, should on their face sufficiently demonstrate their reference to such agreement without the aid of parol proof, but the rule is not absolute, as where there is ground for doubt. (Post, p. 150.)

Citing: Beckwith v. Talbot, 95 U. S., 289, 24 L. Ed., 496; Johnson v. Dodgson, 2 Mees. & W., 653; Salmon Falls Co. v. Goddard, 14 How., 446; White v. Breen, 106 Ala., 169, 32 L. R. A., 127; Nickerson v. Weld, 204 Mass., 346, 90 N. E., 589.

8. WILLS. JOINT WILLS.

It has been held that the execution of mutual wills by two persons, each of whom is named as the beneficiary of the other, does not of itself, and without the aid of extrinsic circumstances, evidence the fact of a contractual relation, since the execution of the two wills may have been merely coincidental, with no knowledge on the part of one that the other was making, or had made, a similar will, but the rule is otherwise in the case of a joint will executed and signed by two persons, disposing of joint or separate property, for the benefit of the survivor. (Post, p. 153.)

Citing: Frazier v. Patterson, 243 Ill., 80, 90 N. E., 216, 27 L. R. A. (N. S.), 508, 17 Ann. Cas., 1003.

9. STATUTE OF FRAUDS. CONCURRENT WILLS. CONSTRUCTION. COMPACT AGREEMENT. PRESUMPTION.

The four wills bearing the same date, each disposing of property to the survivors, and with the direction that such property be divided at the death of the survivor among the same persons, negative any conclusion but that they were executed pursuant

to a joint compact or agreement, and that each was executed in consideration of the execution of the other three, and no parol evidence would, therefore, be necessary to establish the. fact of a compact or agreement.  (Post, p. 154.)

10. STATUTE OF FRAUDS.  WILLS.  COLLATERAL WILLS.

The Statute of Frauds is merely a statute declaring that a certain kind of evidence is required to support an action in certain cases, and where it appears that four wills are simultaneously executed, each disposing of property to the survivor, and directing that the property be divided at the death of the survivor among the same persons, such wills must be considered together, and when so considered constitute written evidence of a contract between the parties, so that the contract does not rest entirely in parol. (Post, p. 154.)

Citing:  Huffine v. McCampbell, 149 Tenn. (22 Thomp.), 47; Brewer v. Glass Casket Co., 139 Tenn. (12 Thomp.), 97, 113.

11. STATUTE OF FRAUDS.  WILLS.  COLLATERAL WILLS.

Where the bill may be said to disclose a contract, evidenced by writing signed by the party to be charged, whereby each of four persons agreed to devise his estate to the survivors of the four, with remainder at the death of the last survivor to the same persons, and the wills do not refer to any particular parcel of real estate, and, insofar as the contract is evidenced by the wills, the contract may be said to refer only to the property of which each ·testator may die seized and possessed.  (Post, p. 154.)

Citing:  Bird v. Jacobus, 113 Iowa, 194; Starnes v. Hatcher, 121 Tenn. (13 Cates), 330.

12. WILLS.  CONSTRUCTION.  COLLATERAL WILLS.  PLEAD- INGS.

Under a bill averring that wills were simultaneously executed by four joint owners of property whereby each agreed to devise his estate to the survivors of the four, with remainder at the death of the last survivor to the complainant and her brothers and sisters, the contract which may be proven is, therefore, the con- tract which appears from the recitations of the four wills, con- strued together; such contract would not be sufficient to charge the specific land described in the bill with a specific trust in favor

of the defendants in the lifetime of the defendants, but is suffi-
cient, if supported by proof, to authorize a decree restraining the
defendants from revoking their respective wills, or from making
any disposition of their respective property by gift or conveyance
in the nature of a gift, which would defeat the agreement with
complainant's father, one of the four testators. (Post, p. 155.)

13. EXTENSION OF RULE. JUSTIFICATION.

If, notwithstanding we here have a state of facts not heretofore
presented to this court, the ruling we now make is in conflict with
any of the cases cited, the difference in the facts to which the rule
is applied, and the manifest equities shown by the averments of
the bill, seem to us to be ample justification for an extension of
the rule in favor of the competency of such evidence, in order to
defeat, rather than to aid, the commission of fraud. (Post, p.
155.)

---

*Headnotes 1. Frauds, Statute of, 27 C. J., section 391; 2. Evi-
dence, 22 C. J., section 1564; 3. Frauds, Statute of, 27 C. J., sections
149, 361; 4. Frauds, Statute of, 27 C. J., section 308; 5. Frauds,
Statute of, 27 C. J., section 309; 6. Wills, 40 Cyc., p. 2118.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—HON. JOHN R. AUST, Chancellor.

WILLIAM HUME and WILLIAM M. GREENE, for appellant.

JOHN C. BLACKWELL and HARRY A. LUCK, for appellees.

MR. JUSTICE SWIGGART delivered the opinion of the
Court.

The Chancellor sustained a demurrer interposed by
the defendants to the original bill, to the extent of hold-

ing that the original bill was founded upon an oral contract for the sale of lands, within the application of the fourth section of the Statute of Frauds. Shannon's Code (all editions), section 3142. In all other respects the demurrer was overruled, and a discretionary appeal was allowed to this court.

The facts stated in the bill, and admitted by the demurrer, are substantially as follows: The complainant is a daughter of Elijah Morgan, who died in 1912. Prior to 1904, Elijah Morgan was part owner with the defendants, his brother and two sisters, of certain real estate described in the bill, on which the four brothers and sisters resided. This real estate was operated jointly by the four, and all of the property, both real and personal, together with the income therefrom, was held and used jointly, in community of interest. Elijah Morgan was the youngest of the four, and he alone was married. He and his family lived with the three defendants for many years. It appearing to the four that it would be desirable to hold all said property intact until the death of the survivor, and Elijah Morgan being the only one of the four with direct descendants, the four brothers and sisters entered into an oral agreement that each would make his or her will and provide therein that all his or her property should be used and enjoyed by the surviving brothers and sisters until the death of the last survivor, upon which event the property would be divided among the children of Elijah Morgan. Pursuant to said agreement, each of the four made such a will. All of the wills were executed on February 15, 1904, at the same time and place, and were witnessed by the same witnesses. No reference was made in any of the wills to the agreement or to the other wills. One of the subscribing witnesses to each of the wills is still living. Elijah Morgan

157 Tenn.—10.

died in 1912. His will, executed as aforesaid, was duly probated, and the three defendants had had the use and enjoyment of his interest in said property under the provisions of his will, for a period of about sixteen years, until the filing of the bill. The youngest of the defendants is now seventy-nine years of age, and the oldest is ninety. The agreement, pursuant to which the four wills were executed, was respected and observed by the defendants until within a few months prior to the filing of the bill, when they declared their intention of revoking said wills and making other disposition of their property.

The bill charges that the making of the parol agreement, and the subsequent execution of the wills, was a completed transaction, affirmed by the silence and inaction of the defendants until after the death of Elijah Morgan, and by their acceptance of the benefits conferred upon them by the will of Elijah Morgan, for more than sixteen years after his death. The bill charges that to permit the defendants now to revoke their said mutual wills, contrary to their agreement with complainant's father, would violate equity and good morals; and it is averred that by reason of the premises, the entire joint property and estate of the defendants is clothed with a trust in favor of complainant and the others in like situation who have not hitherto disposed of their interest as remaindermen.

The bill prays for a specific performance of the agreement made by Elijah Morgan with the defendants, for the benefit of complainant and her brothers and sisters, and for an injunction restraining the defendants from making other and different disposition of their property; and for the declaration of a trust; and for general relief.

*(1)* In *Goodloe* v. *Goodloe,* 116 Tenn., 252, it was shown that the complainant, at the solicitation of his aunt, abandoned lucrative employment and entered into her service upon an agreement that she would execute a last will, giving to him a farm in Maury County, Tennessee, together with the personal property located thereon. Complainant faithfully performed the service required, to the satisfaction of his aunt, and when she died without discharging her obligation, complainant filed his bill for a specific performance, with an alternative prayer seeking the value of the services he had rendered. This court held that the contract could not be enforced. The court said:

"The contract relied upon was one resting in parol, and was therefore unenforceable. It is true, as insisted by complainant's counsel, that the weight of authority, English and American, is that part performance of a contract under the conditions disclosed in this record, will take the contract out of the operation of the Statute of Frauds; but as early as *Patton* v. *McClure,* Mart. & Yerg., 333, it was held that partial performance of a parol contract for the sale and conveyance of land would not relieve from the application of the statute. This rule then established has since been applied in a great number of cases, so that it may now be regarded as a rule of property in this State."

*(2)* In *Starnes* v. *Hatcher,* 121 Tenn., 330, it was held by this court that a contract, properly evidenced by writing, as required by the Statute of Frauds, whereby a person agrees to make a will in a certain way, or to devise property to a certain beneficiary, is valid and binding, and may be specifically enforced.

Cases dealing with such contracts in other jurisdictions are so frequently controlled in their disposition by the

prevailing rule that the Statute of Frauds may not be interposed as a defense to a contract against one who has fully performed the contract on his part, that little assistance may be derived therefrom in the application of our statute and rules of procedure to the case at hand.

The situation disclosed by the bill is unusual, and calls for a consideration of the principle underlying the Statute of Frauds, rather than for a mere application of precedents.

(3) Parol contracts for the sale or disposition of land are not void, as against public policy, but are only voidable at the instance of the person against whom such a contract is invoked. *Brakefield* v. *Anderson,* 87 Tenn., 206; *Choate* v. *Sewell,* 142 Tenn., 487.

(4) Of the nature and character of the writing necessary to be proven, when the Statute of Frauds is invoked, this court, in *Lee* v. *Cherry,* 85 Tenn., 707, 708, said:

"It is not essential that the contract of sale shall be in writing, provided there is produced a writing containing the terms of the oral contract, and authenticated by the signature of the party to be charged. The language of the fourth section of the statute is: 'Unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some person thereunto by him lawfully authorized.'"

(5) And of the purpose and reason of the Statute of Frauds this court, in *Whitby* v. *Whitby,* 36 Tenn. (4 Sneed), 473, 478, said:

"It obviously was designed to protect the owners of land from being drawn into hasty or inconsiderate agreements in relation to what is deemed the more valuable and important species of property, and to guard against misunderstanding as to the nature and extent of such

agreements; and hence the provision that the owner should not be divested of his title except by evidence in writing, signed by himself. This, in substance, is the letter and spirit of the statute. The same policy dictated the enactment that the sale of slaves should be evidenced by writing.

"We think it clear that the consideration is not to be regarded, in construing the statute, as part of the contract, but merely as inducement to it. And therefore no principle of the law is violated by the admission of parol evidence of the consideration, whenever it becomes necessary to be shown."

If the will executed by each of the three defendants be regarded as a note or memorandum of the contract with which he or she is sought to be charged, the fact that it fails to recite that it was executed in consideration of the execution of a similar will by each of the other three brothers and sisters, cannot be material, in view of the rule in *Whitby* v. *Whitby, supra,* and repeated in subsequent cases, that the writing relied upon to establish the contract need not recite the consideration, but the consideration may be proved by parol evidence.

It is, however, necessary that the fact that a contract was made and its terms be evidenced by a writing, signed by the person to be charged. *Sheid* v. *Stamps,* 34 Tenn. (2 Sneed), 172.

(6) In determining whether the written will of each of the three defendants evidences the fact that a contract had been entered into by such defendant with his or her brothers and sisters, whereby the will of each was written and executed, it seems to us proper to consider the circumstances under which each of the four wills was prepared and executed, as disclosed by the averments of the original bill. Looking to these circumstances, it appears

that the four wills were executed simultaneously, at the same place, and were witnessed by the same persons. They manifest a joint purpose which could not be consummated except through the co-operation and agreement of the four parties in interest; that their joint property be held intact until the death of the survivor, and then be distributed among the children of one of them.

The four instruments, executed under these circumstances, must necessarily be considered as parts of a single transaction, to the same extent as if they had been executed upon the same sheet of paper. It is proper, therefore, that they be construed and considered together, and not each one separately. 25 R. C. L., 680-681; *Anderson* v. *Anderson,* 181 Iowa, 578; *Beckwith* v. *Talbot,* 95 U. S., 289, 24 L. Ed., 496; *White* v. *Breen,* 106 Ala., 169, 32 L. R. A., 127; *Shelinsky* v. *Foster,* 87 Conn:, 90, 87 Atl., 25, Ann. Cas. 1914C, 1007; *Lee* v. *Butler,* 167 Mass., 426, 57 Am. St. Rep., 466; *Flegel* v. *Dowling,* 54 Ore., 40, 19 Ann. Cas., 1159; *Nickerson* v. *Weld,* 204 Mass., 346, 90 N. E., 589.

*(7)* In *Beckwith* v. *Talbot, supra,* which is cited with approval in several of the other cases above cited, the Supreme Court said:

"It is undoubtedly a general rule that collateral papers, adduced to supply the defect of signature of a written agreement under the Statute of Frauds, should on their face sufficiently demonstrate their reference to such agreement without the aid of parol proof. But the rule is not absolute. *Johnson* v. *Dodgson,* 2 Mees. & W., 653; *Salmon Falls Co.* v. *Goddard,* 14 How., 446. There may be cases in which it would be a violation of reason and common sense to ignore a reference which derives its significance from such proof. If there is ground for any doubt in the matter, the general rule should be enforced.

But where there is no ground for doubt, its enforcement would aid, instead of discouraging, fraud.''

In *White* v. *Breen, supra,* the Supreme Court of Alabama said:

''We said the several writings must, upon their faces, clearly relate to, and connect themselves with, each other. The rule, however, does not necessarily require express mention in one document of another, or in each of all the others; and this statement, we conceive, does not modify the rule, when properly interpreted, as it is stated in *Knox* v. *King,* 36 Ala., 367, viz: 'When the memorandum in writing is itself incomplete, it cannot derive aid from another writing unless the memorandum refer to the other writing;' and that 'oral evidence cannot be received to connect the two or to supply the wanting link.' This last rule is subject to the exception which obtains generally in the construction of written contracts—that the situation and circumstances of the parties may be looked to, when necessary, to aid in arriving at the meaning of what they have written. An explanation of these rules will be found in *Jenkins* v. *Harrison* (66 Ala., 357). We are of opinion that when all the writings adduced, viewed together, in the light of the situation and circumstances of the parties at the time they were written, show unmistakably that they relate to the same matter and constitute several parts of one connected transaction, so that the mind can come to no other reasonable conclusion, from the evidence so afforded, than that they were each written with reference to those concurrent or preceding, then there is such a reference of the one to the other as satisfies the rule, although reference in express terms does not appear. The rule is one founded in reason; and when, as practical men, we look at the writings, and see, inhering in them, evidence which entirely satisfies the

mind that they all relate to one general transaction, there is no reason why they should not be so considered. There is in such case a direct reference of the one to the other, within the meaning of the law. The application of the principle to the facts of this case will illustrate our meaning. The case of *Beckwith* v. *Talbot,* 95 U. S. 289, 24 L. Ed., 496, aptly illustrates it.''

And in *Nickerson* v. *Weld, supra,* the Supreme Court of Massachusetts said:

''The old rule, by which no other paper could be used to help out the memorandum unless incorporated into it by reference in the memorandum itself (*Morton* v. *Dean,* 13 Met., 385; *Boardman* v. *Spooner,* 13 Allen, 353), is no longer followed. The connection between different papers, so that they may be considered together and their sufficiency be determined by the contents of all of them, may be proved by oral evidence, at least so far as it is the result of that evidence to establish the fact that all of the different papers which are so to be considered together were brought to the attention of both parties, and were linked together in their minds, so that the parties themselves may be found to have adopted all the papers as the expression of their purpose. This is the effect of the recent cases. 'There is no doubt under the authorities,' said the present Chief Justice in *Lee* v. *Butler,* 167 Mass., 426, 'that the letter and receipt, as well as the paper containing the promise, may be used to complete the memorandum in writing required by the Statute of Frauds to make such a contract binding. . . . It is also well settled that parol evidence may be introduced to show the situation of the parties and the circumstances attendant upon the transaction for the purpose of applying the contract to the subject-matter, and of showing

the connection of different writings constituting the memorandum with one another.' ''

*(8)* It has been held that the execution of mutual wills by two persons, each of whom is named as the beneficiary of the other, does not of itself, and without the aid of extrinsic circumstances, evidence the fact of a contractual relation, since the execution of the two wills may have been merely coincidental, with no knowledge on the part of one that the other was making, or had made, a similar will.

It has, however, been ruled otherwise in the case of a joint will executed and signed by two persons, disposing of joint or separate property, for the benefit of the survivor.

In *Frazier* v. *Patterson,* 243 Ill., 80, 90 N. E., 216, 27 L. R. A. (N. S.), 508, 17 Ann. Cas., 1003, it is said:

''If two persons make wills, each devising his property to the other, there is no necessary inference that the wills were the result of any mutual or reciprocal agreement or understanding. Such wills might be executed without either party knowing that the other had executed his will; but where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife and where they have a common interest in the welfare of the devisees. In the case at bar the parties had one daughter. They had a mutual interest in her. They desired that she should have the enjoyment of their real estate during her life and at her death her children should take it in fee. If evidence of a mutual compact is necessary in such case, that evidence

is afforded by what the parties did. We cannot see how the situation would be any different if witnesses had testified that they heard this husband and wife discuss what disposition they would make of their respective estates, and that they agreed with each other that they would make a joint will, such as they did make. The fact that they made such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner."

(9) The four wills bearing the same date, each disposing of property to the survivors, and with the direction that such property be divided at the death of the survivor among the same persons, negative any conclusion but that they were executed pursuant to a joint compact or agreement, and that each was executed in consideration of the execution of the other three. No parol evidence would, therefore, be necessary to establish the fact of the compact or agreement. (10) "The Statute of Frauds is, after all, merely a statute declaring that a certain kind of evidence is required to support an action in certain cases." *Huffine* v. *McCampbell,* 149 Tenn., 47, 48. We conclude, therefore, that the written will of each of the three defendants, considered in connection with the other three wills, constitutes written evidence of the contract between the parties, so that the contract does not rest entirely in parol. *Huffine* v. *McCampbell, supra; Brewer* v. *Glass Casket Co.,* 139 Tenn., 97, 113.

(11) In the view herein expressed, the bill may be said to disclose a contract, evidenced by writing signed by the party to be charged, whereby each of four persons agreed to devise his estate to the survivors of the four, with remainder at the death of the last survivor to complainant and her brothers and sisters. The wills do not

refer to any particular parcel of real estate, and, in so far as the contract is evidenced by the wills, the contract may be said to refer only to the property of which each testator may die seized and possessed.

In *Bird* v. *Jacobus,* 113 Iowa, 194, it was held that such an agreement could be enforced, but not so as to prevent the contracting party from disposing of his real estate during his life, except in such manner as to defeat the obligation. It was this character of contract that was enforced by this court in *Starnes* v. *Hatcher, supra;* and manifestly there was nothing in the contract in *Starnes* v. *Hatcher,* which would have interfered with the management and handling of the property of the contracting party during his lifetime.

(*12*) The contract which may be proven, under the averments of the bill, is, therefore, the contract which appears from the recitations of the four wills, construed together. Such a contract would not be sufficient to charge the specific land described in the bill with a trust in favor of complainant, during the lifetime of the defendants, but we think the averments of the bill are sufficient, if supported by proof, to authorize a decree restraining the defendants from revoking their respective wills, or from making any disposition of their respective property, by gift, or conveyance in the nature of a gift, which would defeat the agreement with complainant's father.

(*13*) Cases in which this court has dealt with the competency of parol evidence offered in aid of a memorandum or writing, relied upon to satisfy the Statute of Frauds, include the following: *Watts* v. *Warner,* 151 Tenn., 421; *Case* v. *Brier Hill Colleries,* 145 Tenn., 1; *Wright* v. *Harrison & Black,* 137 Tenn., 157; *Dry Goods Co.* v. *Hill,* 135 Tenn., 60; *Harriman Land Co.* v. *Hilton,*

121 Tenn., 308; *Byrd* v. *Phillips,* 120 Tenn., 14; *Wilson* v. *Winters,* 108 Tenn., 398; *Dougherty* v. *Chestnutt,* 86 Tenn., 1; *Lee* v. *Cherry,* 85 Tenn., 707; *Saunders* v. *Hackney,* 78 Tenn., 194; *Johnson* v. *Kellogg,* 54 Tenn., 262; *Dobson* v. *Litton,* 45 Tenn. (5 Cold.), 616; *Bryan* v. *Hunt,* 36 Tenn. (4 Sneed), 543; *Pipkin* v. *James,* 20 Tenn. (1 Humph.), 325. If, notwithstanding we here have a state of facts not heretofore presented to this court, the ruling we now make is in conflict with any of the cases cited, the difference in the facts to which the rule is applied, and the manifest equities shown by the averments of the bill, seem to us to be ample justification for an extension of the rule in favor of the competency of such evidence, in order to defeat, rather than to aid, the commission of fraud.

It is our conclusion, therefore, that the Chancellor was in error in sustaining the demurrer. His decree will be reversed, and the cause remanded for further proceedings consistent with this opinion.

The defendant will pay the cost of the appeal.