MRS. ANNIE MORGAN HARRIS v. J. WADE MORGAN, et al.

Middle Section.    December 6, 1930.

446

William Hume and William M. Greene, of Nashville, for appellant, Mrs. Harris.

Harry A. Luck and John C. Blackwell, of Nashville, for appellees, Morgan, et al.

CROWNOVER, J. The original bill in this cause was filed to enforce specific performance of an oral agreement made by Elijah Morgan with the defendants, by which they mutually agreed to and did make their separate wills each devising and bequeathing his property to the other three for and during their lives and upon the death of the survivor then in remainder to the children of Elijah Morgan and their niece, Nannie Morgan Ragan; for an injunction restraining the defendants from making other and different dispositions of their property; for the declaration of a trust; and for general relief.

The defendants demurred to the bill, on the ground that said oral agreement came within the fourth section of the Statute of Frauds, which demurrer was sustained by the Chancellor, and complainant appealed to the Supreme Court, which court reversed the Chancellor in a written opinion styled Harris v. Morgan, 157 Tenn., 140, 7 S. W. (2d), 53.

The cause was remanded to the Chancery Court of Davidson county for further proceedings consistent with that opinion.

The defendants thereupon filed their answer, admitting the making of the wills but denying any agreement.

The cause was heard by the Chancellor on depositions and the record, and he held that there was no agreement and dismissed the bill.

Complainant appealed from said decree to this court and assigned five errors, which raise only one proposition, and that is, whether there was an agreement between said four parties to make

their mutual wills devising their respective interests to the other three and upon the death of the survivors, then in remainder to the children of Elijah Morgan and to their niece, Nannie Morgan Ragan.

The proof shows that Elijah and Wade Morgan and their two sisters, Malvina and Mary Morgan, all lived together and held their property, consisting of a farm of about four hundred acres and certain personal property, in common; that Elijah Morgan was the only one married and he had four children. His wife had died and he and his four children, one of whom was complainant, and his niece, Nannie Morgan, lived in the same home with the other three on said farm. But the parties had three other brothers residing elsewhere, who they desired should have no interest in or inherit their property, and they desired to so dispose of it as to leave each one's undivided interest in the property to the survivors during life, and in order to effect this arrangement they agreed to execute wills so devising their property.

In 1904, the defendant Wade Morgan drafted a will for each of the four parties, each will devising the respective party's interest to the other three for and during their natural lives and upon the death of the survivor then in remainder to the children of Elijah Morgan and to their niece, Nannie Morgan, who afterwards married Ragan. All four wills were identical and were signed before the same attesting witnesses on the same day.

Elijah Morgan died in 1912 and his will was probated, and the three defendants took possession of the property and have used it as their own ever since without accounting to anyone.

The defendants in their testimony deny any agreement to make the wills and to dispose of the property as was done in the wills, but they later on admit in their testimony that they had trouble about their mother's estate, in that they had bought land and had the title conveyed to their mother, who afterwards died, and they found that their other three brothers would inherit shares in the property, hence, they had to obtain deeds from those brothers, so they agreed to make these wills in order to avoid such trouble again, as they desired the survivors to hold their property in common so long as they lived. One of the attesting witnesses testified that they called on him and another and told them that they had agreed to make their wills and requested them to subscribe as witnesses to each will. One of the defendants, Miss Mary Morgan, who denied that she had executed any will at all, told other parties that she would never have made her will in the manner she did, had not Elijah Morgan agreed to name their niece, Nannie Morgan, as one of the remaindermen with his children in his will.

All these old people finally admit that they had agreed to make these wills in order to cut out their other three brothers, but they still deny that they had any agreement to devise the remainder to the children of Elijah Morgan and to their niece, Nannie Morgan Ragan. But after reading all of the testimony and looking to the wills and viewing the whole surrounding circumstances, we are of the opinion that they agreed to more than they admit. When an agreement to execute mutual wills is established, then we may look to the contents of the wills for the terms of the agreement. In other words, it was not necessary for them to agree on every little detail of the disposition of their property. If they agreed to make mutual wills, then the terms of the written wills will govern, and as stated by our Supreme Court in this case:

"The four wills bearing the same date, each disposing of property to the survivors, and with the direction that such property be divided at the death of the survivor among the same persons, negative any conclusion but that they were executed pursuant to a joint compact or agreement, and that each was executed in consideration of the execution of the other three. No parol evidence would, therefore, be necessary to establish the fact of the compact or agreement."

Hence we are satisfied that they had an agreement to make mutual wills and to dispose of the property as devised in the wills.

It is insisted by appellant that according to the decision of the Supreme Court in this case no oral proof was necessary and that proof that the four wills were executed was sufficient. But we do not agree with this contention. We are of the opinion that the expressions of the Supreme Court must be construed in the light of the situation, and that the Supreme Court held that if the facts were proven as alleged in the bill, then complainant was entitled to relief, and the cause was remanded for proof. But we are of the opinion that in view of the admissions made by these parties, together with the other proof, there was an oral agreement between all of said parties to make mutual wills in the manner in which they did.

Preliminary, informal and tentative agreements are merged into the subsequent formal contract, and the latter contract supersedes the earlier one. A party, in the absence of fraud, accident or mistake, cannot abandon his written contract and attempt to enforce a previous oral agreement on the ground that the written agreement is different (13 C. J., 597-9; Wolfe v. Potts, 42 S. W., 188), and he cannot set up an oral contemporaneous agreement that is in conflict with the written contract. Litterer v. Wright, 151 Tenn., 210, 268 S. W., 624; McGannon'v. Farrell, 141 Tenn., 644, 214 S. W., 432.

It is insisted also by appellant that a trust should be set up in the property described in the bill, now held by these defendants. But we are of the opinion that the Supreme Court has settled this proposition in its opinion, wherein it is stated that:

"The wills do not refer to any particular parcel of real estate, and, in so far as the contract is evidenced by the wills, the contract may be said to refer only to the property of which each testator may die seized and possessed.

"In Bird v. Jacobus, 113 Iowa, 194, it was held that such an agreement could be enforced, but not so as to prevent the contracting party from disposing of his real estate during his life, except in such manner as to defeat the obligation. It was this character of contract that was enforced by this court in Starnes v. Hatcher (121 Tenn., 330); and manifestly there was nothing in the contract in Starnes v. Hatcher, which would have interfered with the management and handling of the property of the contracting party during his lifetime."

The wills show conclusively that each one intended to devise and bequeath whatever property he had at his death to the others. The wills do not devise any specifically described property other than "the rest, residue and remainder of my estate both real and personal," etc. Thus showing that they intended to devise and bequeath whatever was left at each one's death.

It results that the assignments of errors must be sustained and the decree of the Chancellor will be reversed. The prayer of the bill for specific performance of the agreement made by Elijah Morgan with the defendants for the benefit of complainant and the others will be granted, and the defendants will be restrained from destroying their wills, from making other wills and from disposing of their property contrary to the terms of said wills. The cost of the cause including the cost of the appeal is adjudged against the defendants, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.