STATE, for Use of BURROW, v. COTHRON et al.—113 S.W. (2d), 81.

Middle Section.   September 4, 1937.

Petition for Certiorari denied by Supreme Court, February 12, 1938.

Albert Williams and Joe Brown Cummings, both of Nashville, for appellant Mrs. Lassie Burrow.

C. R. Jent, of Lafayette, and P. J. Anderson, of Gainesboro, for appellee Wilson Cothron.

J. R. Smith, of Lafayette, for appellee Manson Cothron.

H. B. McGinness, of Carthage, for appellee Bonding Co.

CROWNOVER, J. The original bill in this cause was filed by Mrs. Lassie Burrow against Wilson Cothron, administrator with the will annexed of the estate of W. J. Cothron, deceased, and the surety on his administrator's bond, the United States Fidelity & Guaranty Company, to recover a legacy of $500 bequeathed to her in the will of said W. J. Cothron.

It was prayed in the bill, among other things, that Wilson Cothron, administrator, etc., be required to account for the assets of said estate; that the land notes belonging to said estate be declared a trust fund in his hands for the payment of said legacy; that the administration of said estate be transferred to the chancery court; and that she be granted a decree against said administrator and the surety on his bond for $500, with interest.

The will of W. J. Cothron, deceased. a copy of which was filed as an exhibit to the bill, made the following bequest to Lassie Burrow:

". . . Figuring that I have at present $2680.00 on land notes $200.00 for cattle sheep and corn $600.00 in cash in bank I want

Lassie Burrow to have $500.00 out of that land money when collected. . . ."

After the filing of Wilson Cothron's answer and cross-bill and amended and supplemental cross-bill, making Clovis Cothron and I. M. Cothron and the sureties on I. M. Cothron's bond as administrator (prior to the probate of the will and the appointment of Wilson Cothron as administrator with the will annexed) parties to the cause; the filing of I. M. Cothron's answer; the filing of the complainant's amended and supplemental bill making Manson Cothron, wife of Wilson Cothron, a party; and the filing of the answer of Wilson Cothron and Manson Cothron—the facts developed that the "$2,680.00 on land notes" mentioned in the will referred to two notes executed by A. L. Evetts and W. E. Hesson to W. J. Cothron, one for $2,450 and one for $90, dated January 1, 1932, the total amount of which, with interest, at the date of the execution of the will, was approximately $2,680.

Wilson Cothron first attempted to claim that the $2,680 in land notes referred to a land note of Clovis Cothron, but it developed that the statute of limitations had run against a $2,000 note of Clovis Cothron's to W. J. Cothron, executed in 1919, and that W. J. Cothron had not intended to collect it and had given it, before his death, to Clovis Cothron, or to some one for him; that the Clovis Cothron note, with interest, would have amounted to approximately $3,560 at the date of the execution of the will; and that there was no question but that the notes referred to in the will were the Evetts and Hesson notes.

The $2,450 Evetts and Hesson note (known in the record as the Evetts note) reads as follows:
"$2450.00

"One day after date we or either of us promise to pay W. J. Cothron twenty-four hundred and fifty dollars balance on land which he has this day and date made us a deed to. This note is to bear interest at the rate of 6% and to be paid annually and to secure the payment of this note and interest on same a landlord's lien is retained on said land and is so specified in the deed. In the default of the payment of said interest annually said Cothron shall have a right to sell land for interest and principal. This January 1st, 1932.

his<br>
"A. L.   X   Evetts<br>
mark<br>
"W. E. Hesson

"Witness J. H. Merryman."

On the back of the note is written the following:

"I transfer this note to Wilson Cothron, Jr., for services in my affliction. This January 9th, 1932.

"W. J. Cothron."

"enters have been paid on 1932
"enters have been paid on 1933
"enterst paid on this note 1934
"inters paid on this note 1935
"Credit on this note $200.00
"Credit on this note $300.00"

"I have this day transferred this note to Manson Cothron. This November 15th, 1934.

"Wilson Cothron, Jr."

The $90 note is not in the record. It was paid by the makers to Mrs. Manson Cothron after the death of W. J. Cothron.

Wilson Cothron then contended that the two Evetts and Hesson notes were given to him by W. J. Cothron in consideration for his (Wilson's) looking after him while he was in bad health due to having diabetes; that the indorsements on the notes show that this was the consideration for the transfer; that he later transferred them to his wife, Manson Cothron, for her services in nursing the deceased in his illness; and that they were not assets of the estate of W. J. Cothron at his death, therefore the complainant's legacy must fail.

W. J. Cothron was an uncle of Wilson Cothron, Clovis Cothron, and Mrs. Lassie Burrow (brothers and sister).

In 1927, Wilson Cothron and family moved to the home of W. J. Cothron, at his request, and remained there until W. J. Cothron's death on January 20, 1933.

W. J. Cothron had diabetes for years, but was not in bed or ill except for thirty days before his death when blood poison developed in one foot.

In 1930 he executed a deed conveying 80 acres of land to Wilson Cothron, and delivered it to Ed Shrum to be delivered to Wilson Cothron after his death. The deed recites that the consideration was $1,500, but Wilson Cothron testified that he did not pay anything for the land; that W. J. Cothron conveyed it to him in consideration of his taking care of him.

He executed his will on January 9, 1933, eleven days before his death.

The indorsement by W. J. Cothron to Wilson Cothron on the Evetts $2,450 note is dated January 9, 1932, but the evidence for the complainant is that the notes were indorsed when the will was made, but the indorsement was dated back a year. Mrs. Lassie Burrow testified that Wilson Cothron told her that he asked W. J. Cothron to date the indorsements on the notes a year earlier than the will, which was done. G. C. Burrow, husband of Lassie

Burrow, testified that Wilson Cothron stated that the assignments of the Evetts notes were dated back a year. I. M. Cothron testified that he saw the Evetts notes in W. J. Cothron's possession six months before his death. Clovis Cothron testified that Wilson told him that the indorsement on his $735 note was dated back a year. Wilson Cothron and his wife, Manson Cothron, testified that the indorsements were not dated back; that the notes were actually transferred to Wilson a year before the will was executed. But the preponderance of the evidence is that the indorsements on the notes were made at the time the will was executed.

Lassie Burrow testified that Wilson Cothron told her, after the death of W. J. Cothron, that he had directed him (Wilson) to give her $500 out of the Evetts notes, and that he had promised W. J. Cothron to carry out his wishes in the will; but that later he told her that he had found out that he did not have to pay her and was not going to pay her. G. C. Burrow testified to the same facts.

A letter written by Manson Cothron to Lassie Burrow was introduced on Manson Cothron's cross-examination and filed as an exhibit to her testimony, which is as follows:

"You said Uncle Wash wanted you to have something. I know he did. He has it fixed so you will. And we will give it to you as soon as we can collect it. You are going to get enough to help you out a lot. We don't want you to get mad at us for we are going to do just what he wanted done. So don't go and try to get in law. We want to treat you right and give you what he wanted you to have. He wanted you to have $500.00. It may be a year or more before we can get it for you. Will pay as soon as we can. Don't show this to anyone or say a word to anyone for we are under oath to tell nothing so rest easy and say nothing to no one. We want you to have what is coming to you so come and not bring. no one with you so we can talk it over. Your Friend Manson."

Lassie Burrow testified that Mrs. Manson Cothron was present several times when she discussed the legacy with Wilson Cothron; that the first time she demanded it was a few days after W. J. Cothron's death, and Manson Cothron was present.

The evidence at the hearing established the fact that the Clovis Cothron $2,000 note was not an asset of the estate at the death of W. J. Cothron.

The case was tried by the chancellor on oral evidence, without a jury, by written stipulation of counsel.

The chancellor found that the Evetts $2,450 note "on its face shows a transfer of the same to Wilson Cothron by W. J. Cothron, dated January 9, 1932, and the transfer of this note bears the genuine handwriting and genuine signature of W. J. Cothron, deceased, and the Court finds that the same was transferred to Wil-

son Cothron by the deceased, during his life-time, although the Court is of the opinion that the date of the transfer is not the actual date it was made, but that from the proof the transfer was dated back, but regardless of the actual date the transfer of the note was made and its delivery to Wilson Cothron, the Court is of the opinion that under the facts the deceased surrendered or transferred the note in his lifetime, and that at the time of his death it was not an asset of his estate, and that the proof is not sufficient to impress this note with the trust, as insisted by the complainant. This note was later transferred by Wilson Cothron to his wife, Manson Cothron, however there are some circumstances in connection with the possession of this note that tend to invite suspicion and some inference that Wilson Cothron took the note, as well as the $735.00 Clovis Cothron note, hereafter mentioned, with some instructions from the deceased as to its use, but the fact that Wilson Cothron had the notes in his possession; that the transfer by the deceased to defendant Wilson Cothron written thereon in his, deceased's, handwriting and with his genuine signature attached thereto is clearly sufficient in the mind of the Court to overcome any inference or suspicion as aforesaid, and that the Court would not be justified, under the proof, in impressing these notes with a trust, as the complainant insists.''

He decreed that the legacy of $500 to the complainant, Mrs. Lassie Burrow, must fail because it is charged specifically against certain land notes, when collected, and that an ademption of said legacy resulted by the transfer of said notes by the testator in his lifetime. And he dismissed the bill in so far as it sought to recover the $500 legacy.

The complainant excepted to that part of the decree and appealed to this court and has assigned as errors the chancellor's failure to hold the Evetts notes were transferred to Wilson Cothron in trust for the payment of this legacy and the carrying out of the terms of the will, and his holding that there was an ademption of the legacy.

The note purports to show a consideration for the transfer from W. J. Cothron to Wilson Cothron—that it was given for services in the illness of W. J. Cothron. And a valid consideration, in the absence of evidence to the contrary, is presumed. Code, section 7829.

But after carefully reading the evidence and the will we are of the opinion that these notes were delivered to Wilson Cothron as trustee to carry out the terms of the will, and that it was evidently intended that Wilson should receive the balance.

Under the Negotiable Instruments Law the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument, as between immediate parties or one not a holder in due

course.  Code, section 7340; 8 C. J. 206, section 336; Cothron v. Cothron, 21 Tenn. App., 388, 110 S. W. (2d), 1054.

"In other words, the effect of delivery and the extent of the operation of an instrument not under seal as a negotiable note may be limited, as between the parties to it or others having notice, by the condition on which delivery is made.  Smith v. Dotterweich, 200 N. Y. 299, 93 N. E. 985, 33 L. R. A. (N. S.), 892."  8 C. J. 206, Note 9(a); Cothron v. Cothron, supra.

"Evidence to show want of delivery may be circumstantial, and in a proper case evidence of the actual conssideration, or of failure of consideration, or tending to show a conditional delivery, is admissible on that issue."  8 C. J. 1030, section 1344; Cothron v. Cothron, supra.

"A conditional delivery may be shown by parol, at least where the holder is not a bona fide holder in due course."  8 C. J. 1030, section 1344; Cothron v. Cothron, supra.

The will and the testimony above discussed show that the notes were conditionally delivered to Wilson Cothron, as trustee, to be disposed of according to the will, and that they did not become the property of Wilson Cothron.

Parol evidence is admissible to establish a trust.  Mee v. Mee, 113 Tenn., 453, 82 S. W., 830, 106 Am. St. Rep. 865.

But parol evidence is inadmissible to show a trust contradictory to the express terms of a written instrument, in the absence of fraud, mistake, or undue influence.  Caprum v. Bransford Realty Company, 4 Tenn. App., 237; Hunt v. Hunt, 169 Tenn., 1, 14, 15, 80 S. W. (2d), 666.

But in this case we do not think that evidence establishing the trust contradicts the indorsement on the note, "I transfer this note to Wilson Cothron, Jr., for services in my affliction."  The clause, "for services in my affliction," was merely an attempt to show a consideration for the assignment of the note, and the transfer in no way attempted to confer on the assignee a discretion to dispose of the note as he pleased, or to give him a power to defeat the trust as defined in his will, and it is in no way inconsistent with it.

"A valid trust of personal property, may not only be created, but may also be established and proved by mere parol declaration. . . . It is essential . . . that the expressions used should amount to a clear and explicit declaration of trust.  The subject matter of the trust, as well as the object of the trust must be pointed out with certainty."  Harris v. Union Bank, 41 Tenn., 152, 1 Cold. 152, 153; 65 C. J. 254, 255; Cothron v. Cothron, supra.

The trust may be established by the admissions of the party to be charged. Pomeroy's Eq. Jur., 4th Ed., 2232, section 1008; Abbott's Trial Evidence, 4th Ed., 431, section 396.

The declaration of one in possession of property, made against

his own interest, is always admissible, and such evidence is not hearsay.'' Lee v. Johnson, Tenn. Ch. App., 53 S. W., 183, 186.

The will, in full, is as follows: .

''A letter to Wilson telling him just what I want done I have transferred all my notes to you and Manson to do as I say with what I leave in your hands.

''1st thing I want done after I am dead and laid away is, I want my burial expenses and doctor bills paid also my private debts paid of of what money I have in Lafayette Bank I hold a note a-gainst Clovis for $735.00 which I want him to have provided my estate don't have any security money to pay for him if it does I want you to hold the amount paid against him in said note and give him the rest also if I have to pay any of that Leslie Cothron note for Jessie Wilburn you take judgment against him and Booker both be certain that you don't pay but half of it as your dad should pay as much as me. Also you tell your daddy and Clovis that I don't think that my estate ought to pay any of that $150.00 note that is going to Seldon West for I didn't sign my name to it but say noth-ing to any one else about it, but the other note I signed and you pay one third of it also I was on a note to Revely Celsor with your daddy and it may be that we will have to pay if so you pay one third of that note and you keep up with what you have to pay for him and hold the amount that you pay against him in the $735.00 note that I have transferred to you; figuring what I have at present $2680.00 on land notes $200.00 for cattle sheep and corn $600.00 in cash in bank I want Lassie Burrow to have $500.00 out of that land money when collected also Jackson Gray to have $400.00 and Noble to have $200.00 to help them get a high school education I have given Jackson Gray my bed and bed clothes my trunk my watch and fiddle and books want Noble to have my little table rocking chair teach him to keep the silver ½ dollar as long as he lives my Master Ma-son Ring which is in the little till of my trunk I want Clovis to have provided you don't join the Masons if you join them I want you to have it but it is not right to have same unless you join them and any of my wearing clothes that are too large for you I want Clovis to have also I want you to have tomb stones put to my grave but not to cost over $150.00 dollars put me away neat and nice and if little Jackson Gray dies before he has any family I want him buried by the side of me but if he lives to have a family he will want to be put with them. It may be that your dad can get Jessie and Booker to pay one half of that Leslie Cothron debt if so you will only have to pay out of my estate $175.00 on that; you tell Clovis that I said if he would pay the notes that I have secured for him that I wanted him to have the $735.00 dollars note and interest on same but if he don't pay the notes that I have secured for him you hold the note until he pays them; see that the note doesn't run out of date

make him renew same before 6 years runs out or take judgment against him if you will do just what I say and I think you will or I wouldn't let you look after my business if you think that you can't do as I say turn the business over to some one else be certain to take care of what I leave you don't blow it in for if you do your nose will always be on the grind rock   Keep clear of debt and remember when your Dad and I are gone that there is no one else that will stick to you like we would.  So when I am laid away your best friend will be gone; When you get this letter and read it select one of the best friends that you have and let him see it but bind him to say nothing only to substantiate what you say is in this letter   Don't never go back on your poor old Dad if he outlives me for he has had a hard time in life like your Uncle Wash only received $200.00 out of his Dadie estate.

"So I will close this May write more later if I live a few years longer

"Your friend

"W. J. Cothron."

The will plainly states that W. J. Cothron transferred the Evetts and Hesson notes amounting to $2,680 and the $735 Clovis Cothron note to Wilson Cothron to carry out the terms of the will.

The will states that the assets of the estate are:

Cash in bank......................................$  600.00
Land notes (Evetts note)............................. 2,680.00
Clovis Cothron note..................................  735.00

It provides: (1)   That his funeral expenses, doctors' bills, and private debts shall be paid out of the money in the bank; (2) that if any judgments are secured against his estate as security for Clovis Cothron they shall be paid out of the $735 note otherwise the note shall be delivered to him; (3) that out of the land notes (Evetts notes) amounting to $2,680 (the only other asset) shall be paid the following:

Lassie  Burrow........................................$500.00
Jackson Gray .......................................... 400.00
Noble ................................................ 200.00
Possibly the Leslie Cothron debt ....................... 350.00
_____
Total                                                 $1,450.00

The balance of the land notes, which is $1,230, shall go to Wilson Cothron, the transferee, for services in his afflictions.

It will be observed that there are two separate papers; one is the will establishing a trust under which the complainant claims, and the other is the indorsement on the $2,450 note under which the defendant, Wilson Cothron, claims. Both were executed on the same day.  The note does not refer to the will, but the will attempts to dispose of the notes.

Ordinarily, in the absence of fraud, accident, or mistake, parol evidence is not admissible to connect two separate writings which are in themselves distinct and complete, and do not on their face show any connection. 22 C. J. 1156, section 1552. But this does not apply to trusts, Mee v. Mee, 113 Tenn., 453, 82 S. W., 830, 106 Am. St. Rep. 865, or to an agreement to execute mutual wills, and they may be shown by parol evidence, even though they do not refer to each other. Harris v. Morgan, 12 Tenn. App., 445, Id., 157 Tenn., 140, 7 S. W. (2d), 53.

"The Statute of Frauds was, obviously, designed to protect the owners of land from being drawn into hasty or inconsiderate agreements in relation to what is deemed the more valuable and important species of property, and to guard against misunderstanding as to the nature and extent of such agreements; and the consideration is not to be regarded, in construing the statute, as part of the contract, but merely as inducement to it. And therefore no principle of the law is violated by the admission of parol evidence of the consideration, whenever it becomes necessary to be shown; but in order to bind one as to the sale or disposition of land, it is necessary that the fact that a contract was made be evidenced by a writing setting forth its terms, signed by the person to be charged." Harris v. Morgan, 157 Tenn., 140, 7 S. W. (2d), 53.

"If, notwithstanding we here have a state of facts not heretofore presented to this court, the ruling we now make is in conflict with any of the cases cited, the difference in the facts to which the rule is applied and the manifest equities shown by the averments of the bill seem to us to be ample justification for an extension of the rule in favor of the competency of such evidence, in order to defeat, rather than to aid, the commission of fraud." Harris v. Morgan, 157 Tenn., 140, 156, 7 S. W. (2d), 53, 57.

There was also much evidence tending to establish the trust, which evidence was not excepted to. Where parol evidence to contradict a written instrument is admitted without objection, the court may consider it. 22 C. J. 1295, section 1728; Hunt v. Hunt, 169 Tenn., 1, 14, 80 S. W. (2d), 666.

"The parties have a right to try their case on evidence not of the quality or character required by law, and where such evidence is admitted without objection, it is the right and duty of the court or jury to give it the same consideration as if it were legal evidence; but, of course evidence intrinsically destitute of probative quality acquires no new attribute in point of weight by its production in the case. See, 23 C. J., 39-40." Westmoreland v. Farmer, 7 Tenn. App., 385, 389.

We think there is sufficient evidence to establish a trust in the notes.

It is the duty of the administrator to make and state his

accounts and to distribute the balance as provided by law or by the will of the deceased, after eighteen months. Code, sections 8244, 8329, 8335; Sizer's Pritchard on Wills & Executors, 848, section 747.

The Evetts note was due one day after date and was a vendor's lien note. No reason is given why it was not collected and final settlement made. But on the other hand Wilson Cothron has assigned the note to his wife and insists that he had no title to the note, and that it was not impressed with the trust. He therefore renounced his trust and misappropriated the notes, and is liable on his administrator's bond. Code, section 8173.

"If the trustee, executor or administrator, openly denies the rights of the beneficiaries, and assumes the absolute adverse ownership of the property, the statute will begin to run in his favor from the time a knowledge of the denial or of the repudiation of the trust, is brought home to the beneficiaries. Patton v. Overton, 27 Tenn., (8 Humph.) 192, 196." 7 Michie's Digest, 2d Ed., 338, section 467.

The complainant is not only entitled to a judgment against the administrator, but has a right to follow the trust funds into the hands of Manson Cothron. Manson Cothron took the note subject to the equities which attached to it in the hands of Wilson Cothron for two reasons: (1) It was transferred to her after maturity. (2) She took the same with notice of the trust.

The note matured "one day after date," therefore she took it after maturity and is not a holder in due course, and took the note subject to the equities which attached to it, and succeeded only to the title of her transferor, Wilson Cothron. Code, sections 7376, 7377; 8 C. J. 264, section 413.

Her letter to Lassie Burrow, hereinabove quoted, showed that she knew of the trust. The note in her hands will therefore be impressed with the trust. Covington v. Anderson, 16 Lea 310; Merriman v. Cannovan, 9 Baxt. 93; Smarrt v. Watterhouse, 6 Humph. 158; Parker v. Gilliam, 10 Yerg. 394.

Much of the defendant's brief was taken up with the contention that the paper filed as the will of W. J. Cothron was not his will. He does not seem to question the admission of the will in evidence, but attempts to show that the instrument is not a will. It was alleged in the bill that W. J. Cothron died testate and a copy of his will was filed as an exhibit to the bill. The defendant answered that W. J. Cothron died testate as alleged, and that he was administrator with the will annexed. These admissions in the answer are conclusive. The defendant cannot now attack the will in this case.

The legacy was a demonstrative legacy, and there was no ademption. Sizer's Pritchard on Wills & Executors, section 461.

It results that the assignments of errors are sustained, and a decree will be entered in this court for $500, with interest from the date of the filing of the bill, June 22, 1935, to the present, in favor of Mrs. Lassie Burrow and against Wilson Cothron and the surety on his administrator's bond and Mrs. Manson Cothron, but execution will be suspended until the final settlement of the estate. After the settlement of the estate, should there remain any balance due on the judgment, then execution will be issued for that amount. The cause is remanded to the chancery court of Macon county for an accounting and settlement of the estate in that court in accordance with the will and this opinion. The costs of the cause including the costs of the appeal are adjudged against the administrator and the surety on his administrator's bond and Manson Cothron.

Faw, P. J., and Felts, J., concur.