R. F. BREWER *v.* DE CAMP GLASS CASKET CO. *et al.*

(*Knoxville.* September Term, 1917.)

1. **CORPORATIONS.** Foreign. Attachment. Service.

Thompson's Shannon's Code, section 4515, declares that in actions commenced by attachment of property without personal service of process the attachment may be sued out or suit brought in any county where the real property lies or any part of the personal property may be found, while section 5211 authorizes an attachment against the property of a nonresident debtor or defendant. Sections 4539-4541, inclusive, provide for institution of actions against corporations either resident or nonresident by service of process on certain designated officers or agents. Acts 1859-60, chapter 89, embodied in Thompson's Shannon's Code, section 4542, declares that where a corporation, company, or individual has an office or agency or resident director in any county other than that in which the chief officer or principal resides, service of process may be made upon any agent or clerk employed therein. Sections 2549 and 4543-4546, respectively, relate to service on foreign corporations having no office or agency in the State and to substitutionary service on foreign corporation not domesticated and having neither property nor localized business. *Held,* that as section 4516, which apparently restricted the scope of service on agents, was enlarged by Acts 1859-60, chapter 89, a foreign corporation may be served by attachment of its property in any county where such property is found, regardless of the fact that its directors and officers reside in another county; this being particularly true where it did not appear that the corporation was at that time doing business in the State so as to render service of process on resident directors and officers valid. (*Post, pp.* 102-109.)

Acts cited and construed: Acts 1859-60, ch. 89; Acts 1887, ch. 226.

139 Tenn.—7

Brewer v. Glass Casket Co.

Cases cited and approved: Coke & Coal Co. v. So. Steel Co., 123 Tenn., 429; Toppins v. Railroad Co., 73 Tenn., 600; Green v. Snyder, 114 Tenn., 101; Turcott v. Railroad, 101 Tenn., 102; Coke & Coal Co. v. Steel Co., 123 Tenn., 428; Dillingham v. Insurance Co., 120 Tenn., 302; Toledo Railways & L. Co. v. Hill, 244 U. S., 49; International Harvester Co. v. Kentucky, 234 U. S., 579; St. Louis S. W. R. Co. v. Alexander, 227 U. S., 218.

Code cited and construed: Sec. 4515, 4542, 4539-4542, 2549, 4543-4546; Sec. 4516 (1858).

2. **APPEAL AND ERROR. Equity cases. Trial de novo.**

While the general rule is that on appeals in chancery the trial is *de novo*, that relates, not to technicalities of procedure, but to the chancellor's decision on the facts, which does not have the same force as a verdict or finding of fact by a court of law sitting without a jury. (*Post, pp.* 110-112.)

3. **APPEAL AND ERROR. Presentation of grounds of review in court below. Service of attachment.**

In an action begun by attachment where all of the defendants, including the foreign corporation, appeared, and the parties treated the attachment writ as lawfully levied, contesting only the rights conferred by the levy, objections that there was no proper writ because no notice of garnishment in writing was left with the defendant garnished, and that there was no publication for the defendants, where made for the first time on appeal, will not be considered notwithstanding the suit was one in equity. (*Post, pp.* 110-112.)

Case cited and approved: Pennington v. Fourth Nat. Bank, 243 U. S., 269.

4. **STIPULATIONS. Appearance. Demurrer.**

Where defendants moved to dismiss a bill and in the alternative demurred, it being stipulated that if the motion should be sustained, the demurrer would not be considered an entry of appearance, the motion being disallowed, defendants must be treated as having appeared. (*Post, pp.* 112, 113.)

5. **FRAUDS, STATUTE OF. Sufficiency of writing. Signed letters.**

Where defendant, by letter, offered complainant employment for

two years at a fixed compensation, and complainant wrote letters indicating an acceptance, there was a sufficient compliance with the statute of frauds (Thompson's Shannon's Code, section 3142, subsec. 4), even though it be deemed that the written memorandum should be signed by both parties; both defendant and complainant having signed their respective letters. (*Post, pp.* 113-116.)

Cases cited and approved: Leinau v. Smart, 30 Tenn., 308; Deaton v. Tenn. Coal & R. Co., 59 Tenn., 650; Gregory v. Underhill, 74 Tenn., 207; Railroad Co. v. Staub, 75 Tenn., 397; Railroad v. Hayden, 116 Tenn., 672; Smith v. Neal, 2 C. B. (N. S.), 67; Reuss v. Picksley, 4 Hurlst. & C., 588; Vogel v. Pekoc, 157 Ill., 339; Raphael v. Hartman, 87 Ill. App., 634; Sellers v. Greer, 172 Ill., 549; Chase v. City of Lowell, 7 Gray (Mass.), 33; Ives v. Hazard et al., 4 R. I., 14; Himrod Furnace Co. v. Cleveland & M. R. Co., 22 Ohio St., 451; Kearby v. Hopkins, 14 Tex. Civ. App., 166; Martin v. Roberts, 57 Tex. 564.

Cases cited and disapproved: Wilkinson v. Heavenrich, 58 Mich., 574; Co-operative Tel. Co. v. v. Katus, 140 Mich., 367; Adams v. Harrington Hotel Co., 154 Mich. 198; Houser v. Hobart, 22 Idaho, 735;

Code cited and construed: Sec. 3142, subsec. 4. (T.-S.).

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County.—HAL. H. HAYNES, Chancellor.

SUSONG & BIDDLE, COX & TAYLOR and H. G. MORISON, for appellants.

J. READ VOIGT and W. M. SIMPSON, for De Camp Glass Casket Co.

HEAZEL & CAMBLOS, for First Nat. Bank of Kingsport.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill was filed to attach a fund belonging to the defendant company in the First National Bank of Kingsport. There was a motion to dismiss the bill and in the alternative a demurrer in case the motion should fail. It was agreed between the parties that if the motion should be sustained the demurrer should not be considered an entry of appearance. The chancellor disallowed the motion and overruled the demurrer, but, under the statute applicable to the subject, granted an appeal to this court.

The defendant company is a foreign corporation that has not complied with our statutes authorizing such corporations to do business in the State, but its president and secretary and treasurer and several of its directors, all mentioned in the bill, reside in Tipton county, of this State. It has no office or place of business in Sullivan county, but has property there, consisting of about $10,000 on deposit in the First National Bank of Kingsport in that county, which bank is made a defendant.

The complainant sues on a contract for personal services which will presently be more particularly mentioned.

The business of the corporation, as described in the bill, was the making of glass burial caskets and also other articles of glass. It contemplated building a factory for these purposes at Kingsport and had obtained an option on ten acres of silicate lands.

Its purpose was to construct a plant that would cost about $75,000. It employed the complainant as its general superintendent, as he alleges, for the period of two years at the price of $5,000 a year, payable in installments as he should desire, and at the end of each year he was to have a certain proportion of the stock. The bill alleges, in addition to the foregoing matters, that the defendant company was a "foreign investment company," and that it had been engaged in the sale of its stock in Sullivan county, "and perhaps other counties in this State." After alleging that the defendant company had not complied with our laws for the domestication of foreign corporations, the bill continued:

"But it has complied with the act of September 27, 1913, being chapter 31 of the printed acts of said year and familiarly known as the 'Blue Sky Law.' "

Among other requirements of the statute referred to, such corporations as it applies to were required to file with the Secretary of State an authorization to accept service of process when suit should be brought in any county of the State. The defendant company filed such authorization, and on process being sent to him, directed to the sheriff of Sullivan county, where the bill was filed, the Secretary of State acknowledged service in the name of the defendant company. This is the first ground on which the complainant insists that the court acquired jurisdiction of the defendant company. The chancellor held

that the act of 1913 referred to did not apply to corporations of the class to which the defendant belongs. The first question suggested is whether this decision of the chancellor was correct. This question we pretermit as unnecessary to a decision of the cause.

The complainant's chief claim to effective jurisdiction over the defendant is based on his attachment of its funds in the hands of the First National Bank of Kingsport, on the ground of the defendant's non-residence. At this point it is necessary that we set out the motion to dismiss, which was made in the chancery court. That motion reads:

"Come all the defendants, and appearing specially for the purpose of denying the jurisdiction of the court in this cause, except First National Bank, and moved the court to dismiss the bill in this cause as to them, because it appears from the bill and record in the cause that this court has not jurisdiction of the persons of these defendants, because it is alleged in the bill that said company is a foreign corporation with officers and agents in Tipton county, Tenn., upon whom process can be served, and that the other defendants are residents of Tipton county, Tenn., and this suit must be brought in the county where said officers and agents of said De Camp Glass Casket Company reside, or are found, and in the county where said other defendants reside or are found."

The predicate of the motion is that, where there is an office or agency in any county of the State, the

foreign corporation to which it belongs must be sued there, and cannot be proceeded against by attachment of its property in lieu of personal service in any other county where its property may be found.

It is not a sound proposition that because suit may be brought and personal service had on an agent of a non-resident corporation, in one or more counties of this State, where it has an office or agency, on causes of action growing out of or connected with the business of such corporation, an action may not be commenced against it, on those or other causes of action, by original attachment in another county where it has no such office or agency, but in which it has property located. The reverse is true. To hold differently would, in our judgment, be a perversion of our statutes, and would greatly narrow the remedies of our citizens against non-resident corporations. A non-resident corporation might own real or personal property, or both, in many counties of the State, with an office or agency in only one. It would be unreasonable to require a citizen of the State having a demand against such non-resident to go to a distant part of the State, to bring his suit, when there is property in his own county out of which satisfaction might be had. Indeed, such a requirement would make it necessary for the citizen, before bringing his attachment suit, to make inquiry in every county of the State for the purpose of ascertaining whether his non-resident debtor had an office or agency located in any one of the counties. It does not appear why he should be subjected

to that inconvenience and expense.  There is nothing in our statutes to justify such an imposition.

In Shannon's Code (Thompson's Edition) section 4515, it is provided that:

"In actions commenced by the attachment of property without personal service of process, . . . the attachment may be sued out or suit brought in any county where the real property, or any portion of it, lies, or where any part of the personal property may be found."

Section 5211 declares:

"Any person having a debt or demand due at the commencement of an action . . . may sue out an attachment at law or in equity, against the property of a debtor or defendant in the following cases: (1) Where the debtor or defendant resides out of the State."

These two sections lay down the general rule for obtaining effective jurisdiction or non-resident defendants; that is, by attachment of their properties in any county of the State where it may be found.  We now reach another class of cases, those covered by sections 4539 to 4541, inclusive.  This class is one in which a suit may be brought against a corporation, either resident or non-resident (*Coke & Coal Co.* v. *Southern Steel Co.*, 123 Tenn., 429, 131 S. W., 988, 31 L. R. A. [N. S.], 278), in the county where the company has its chief office, by service of process on certain designated officers or agents in a prescribed order of precedence.  Then comes the Acts of 1859-60, chapter 89, now em-

bodied in Shannon's Code (Thompson's Edition) section 4542. This established a new class of cases, viz., those in which "a corporation, company, or individual, has an office or agency or resident director, in any county other than that in which the chief officer or principal resides." As to these it is provided:

"The service of process may be made on any agent or clerk employed therein in all actions brought in such county against said company growing out of the business of, or connected with, said company's or principal's business."

The residue of the section contains a limitation on its scope, expressed as follows:

"But this section shall apply only to cases where the suit is brought in such counties in which such agency, resident director, or office is located."

That is to say, it shall not forbid cases covered by the preceding sections (4539-4541), nor original attachment suits brought in other counties where there is no office or agency, and where property of a non-resident defendant is found. Under the authority conferred by these four sections (4539-4542), any one who has a lawful demand against a corporation, resident or non-resident, growing out of or connected with the business of such corporation, may bring his suit in the county where the office or agency is maintained, and secure jurisdiction of it by personal service of process on the designated officer or agent. The right is not confined to matters growing out of a particular office or agency; it is broad enough to embrace any right

of action growing out of the business. Section 4516 (section 2811 of Code 1858) apparently confines the right to causes of action growing out of the particular office or agency, but this has been construed in connection with the amending Acts of 1859-60, supra, so that the broad language of the latter ("growing out of the business of, or connected with, said company's or principal's business") expresses the commanding rule. *Toppins* v. *Railroad Co.*, 5 Lea (73 Tenn.), 600, 603, et seq. A gloss, or interpretative addition has been added by the court by construction, to the effect that in the county where such office or agency exists a suit cannot be brought by original attachment, on the ground of non-residence, thereby to obtain jurisdiction of the person of the defendant in lieu of personal service of process, but that the action must be *in personam,* process must be served on the officer or agent mentioned or referred to in these statutes. *Green* v. *Snyder,* 114 Tenn., 101, 84 S. W., 808. This case is referred to by counsel for defendant as authority for the broader doctrine that, where an office or agency exists anywhere in the State, the plaintiff or complainant must resort to that county, and there bring his suit, and he is precluded from instituting an original attachment proceeding, based on the ground of non-residence, in some other county where he has found property of the non-resident defendant. The language of the opinion is broad, we concede; but it must be construed in connection with the facts which the court had before its mind. These facts were that the non-resident, at the

time the cause of action arose and continuously thereafter, maintained an office and agency in the county in which the attachment suit was subsequently brought. It was on these facts the court held that the plaintiff should have obtained personal service on the resident agent, and that as he could have obtained such service in that county he could not there maintain an attachment proceeding for non-residence in lieu of such personal service. We are referred to *Turcott* v. *Railroad,* 101 Tenn., 102, 45 S. W., 1067, 40 L. R. A., 768, 70 Am. St. Rep., 661, as an opposing authority. The proposition maintained in that case was simply, that where a railroad corporation, chartered in a foreign State, had carried on its business in Tennessee for a series of years, and kept an office or agency in this State during all that time, it could have been sued here, and jurisdiction obtained by service on its agent, notwithstanding the fact that it had not filed its charter here as required by law, and that one who had a cause of action against it and permitted the period of limitation to elapse before suing could not avoid the bar on the ground that the defendant was in the State in violation of law, and technically a non-resident from the date of its entry. Manifestly this case has no bearing. It should be remarked that the action which was held barred was brought in Shelby county where the railroad company had for years maintained its aforesaid agency.

To present as comprehensive a view as we can, in the limited space at our disposal, of the phase of our

attachment laws which we have just discussed, it will not be amiss to refer again to the case of *Coke & Coal Co.* v. *Steel Co.,* 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278. The court there had under examination the question whether an original attachment on the ground of non-residence could be sued out, and the defendant's property seized, in lieu of personal service of process, where it appeared that the defendant, a foreign corporation, had complied with our statutes prescribing the conditions on which such corporations were permitted to do business here, and had established an office and agency in Hamilton county, where the suit was brought, and had there, for a number of years, carried on its business. It was held that by such compliance the foreign corporation had, by the express terms of our statutes, become domesticated, and must be proceeded against as a domestic corporation, and was not subject to attachment in the form attempted.

Section 2549 of Shannon's Code (Thompson's Edition) presents the case of a foreign corporation that has complied with our statutes but has no office or agency in this State. It is provided that such corporation may be proceeded against by attachment in the manner laid down in the section.

There is still another statute to which we may advert, Acts of 1887, chapter 226. This concerns the case of a foreign corporation not domesticated and which has neither property nor a localized business in this State, but has transacted, in the State, some matter of

business out of which a cause of action has arisen. This statute is reproduced in Shannon's Code (Thompson's Edition), at sections 4543-4546, inclusive. This statute provides for a form of substitutionary service which is unnecessary to refer to here more particularly.

It is believed that the foregoing discussion presents a fairly adequate view of the several methods by which foreign corporations may be sued in our State. It is apparent that, as the defendant company was a non-resident corporation owning property located in Sullivan county, a debt due from the defendant bank to it (*Dillingham* v. *Insurance Co.*, 120 Tenn., 302, 108 S. W., 1148, 16 L. R. A. [N. S.], 220), it was subject to be proceeded against in that county by original attachment levied on that debt, and it is immaterial that it had officers and directors who resided in Tipton county, this State. It was not necessary that the suit should have been brought in the latter county. Indeed, we do not see how the corporation could have been brought before the court by service upon the resident directors in Tipton county, since it does not appear from the bill that it was at that time doing any business in Tennessee. *Toledo Railways & L. Co.* v. *Hill,* 244 U. S., 49, 37 Sup. Ct., 591, 61 L. Ed., 982, 987; *International Harvester Co.* v. *Kentucky,* 234 U. S., 579, 585, 34 Sup. Ct., 944, 58 L. Ed., 1479, 1482; *St. Louis S. W. R. Co.* v. *Alexander,* 227 U. S., 218, 33 Sup. Ct., 245, 57 L. Ed., 486, Ann. Cas., 1915B, 77.

In addition to the main question above considered, and which was the only one presented by defendant's counsel, or passed upon in the court below, in respect of the attachment and the jurisdiction which the complainant contended that he had obtained thereby, the point is now made in this court that there was no proper levy of the attachment writ because, as defendants aver, no garnishment notice in writing was left with the defendant First National Bank of Kingsport, but there was only a reading of the attachment writ itself to the president of the bank. Leaving out of view the fact that the bank was made a party defendant to the bill, and appeared in court when the case was heard, although it did not join in the motion, as shown by the decree, and the further fact that an injunction writ was served on the bank which gave it all needed notice for its protection, forbidding it to pay defendant (and thus impounding the money in a manner fully equivalent to a garnishment [*Pennington* v. *Fourth National Bank,* 243 U. S., 269, 273, 37 Sup. Ct., 282, 61 L. Ed., 713, 715, and note 2, L. R. A., 1917F, 1159]), and the fact that the bill itself in addition contained the fullest notice, and having in mind that it does not appear that a copy of the bill had been served on the bank at the time the decree was rendered, and without passing on the question whether the failure to serve a separate notice on the bank, customary in garnishment cases at law, would be a fatal defect (aside from *Pennington* v. *Fourth National Bank,* supra), or whether a copy of the bill, together with a subpœna

to answer, would be equivalent in chancery to such customary notice at law, and likewise not deciding whether the statement of the officer in his return on the attachment writ that he had not only served the writ on the president of the bank, but had attached the fund in the bank, might be treated as evidence that notice had been left with the bank—we say without considering these matters, or their effect, but merely stating them as matters appearing in the record, it is clear that no such objection was made to the attachment in the lower court as is now made in this court. On this ground we decline to consider it. If the point had been made in the chancery court, any irregularity could have been at once, and easily, corrected, or compliance with any missing technicality readily effected. It is indubitably clear, from the very full decree of the chancellor, that the only point presented to him, on this head, by the defendants, was that inasmuch as the bill showed on its face that there were officers and directors of the company residing in Tipton county, this State, the suit could have been brought only there, where personal service of process could have been obtained, and that there could be, under the circumstances stated, no suit brought in another county by an original attachment levied on the property of the defendant company in that county, based on the ground of non-residence. Both sides, in the chancery court, treated the attachment writ as lawfully levied; the contest was only as to its effect, or the rights conferred by such levy. We shall so treat the controversy

here.   It would be unfair to the complainant to do otherwise.   A different course would have all the effect of an unlawful surprise.   Although the general rule is that on appeals in chancery the trial is *de novo,* this does not cover mere technicalities of procedure, but applies only to the hearing on the merits without regard to the chancellor's decision on the facts of the case, as distinguished from the rule obtaining at law, on appeal, that if there is any evidence to sustain the trial judge in a case tried before him his judgment will be affirmed.

The same observations cover the point now first made here that there was no publication for the defendants.   We add that before there was time for publication, after the levy of the writ, the defendants appeared in court and made the motion to dismiss, which we have just considered.

The defendants, other than the company—that is, the officers and directors—were made defendants in their personal capacity for the purpose of obtaining alternative relief against them.   Their motion to dismiss is the same as that of the company, and rests on no other ground than that the company was not properly in court.   That point having been decided adversely to their contention, the motion must be decided against them, as well as against the company.

The motion having been disallowed, the defendants must now be treated as having made their per-

sonal appearance in court by the filing of the demurrer.

The ground of the demurrer is that the bill shows, on its face, that the contract was not reduced to writing as required by the statute of frauds. The contention is that it should have been signed by both parties, that is, by the company, the employer, and by the complainant, the employee; that, not having been so signed, it was void and unenforceable.

The contract consists of a letter written by the company to the complainant, offering him employment for two years, as its general superintendent, for a consideration therein mentioned. The letter was written April 4th. Complainant alleges in the bill that he accepted it on April 13th. Several letters written later in the month to the company by the complainant, and one in June of the same year, fully recognize the contract as binding on him. Without affirming or denying the proposition of law to the effect that both must sign a contract of the kind appearing in this case, we are of opinion that complainant's letters, just referred to, sufficiently meet any requirement for his acceptance in writing, if any such legal necessity exists.

Waiving a decision of the legal question, we may add that we have no case in our State where it has arisen. We have numerous cases that arose between vendor and vendee, under subsection 4 of our statute of frauds on the subject of the sale of lands, and the making of leases for a longer term

139 Tenn.—8

than one year. Shannon's Code (Thompson's Edition) section 3142, subsection 4. It has been uniformly held, in these cases, that it is sufficient for the vendor to sign, and that he may enforce the contract against the vendee. Some of the same cases apply to leases. The cases under subsection 4 are so numerous, and so well-known to the profession, that they need not be cited. We have cases arising under subsection 5 of the same statute, concerning agreements or contracts not to be performed within the space of one year from the making thereof. In none of these cases was there any question made, or suggestion, as to the need of the signature of both parties. These cases are: *Leinau* v. *Smart,* 11 Humph. (30 Tenn.), 308; *Deaton* v. *Tenn. Coal & R. Co.,* 12 Heisk. (59 Tenn.), 650; *Gregory* v. *Underhill,* 6 Lea (74 Tenn.), 207; *Railroad Co.* v. *Staub,* 7. Lea (75 Tenn.), 397; *Railroad* v. *Hayden,* 116 Tenn., 672, 94 S. W., 940. The question has been decided both ways, in other jurisdictions. That both need not sign, see *Smith* v. *Neal,* 2 C. B. (N. S.), 67; *Reuss* v. *Picksley,* 4 Hurlst. & C., 588; *Vogel* v. *Pekoc,* 157 Ill., 339, 341, 42 N. E., 386, 30 L. R. A., 391; *Raphael* v. *Hartman,* 87 Ill. App., 634; *Sellers* v. *Greer,* 172 Ill., 549, 50 N. E., 246, 40 L. R. A., 589, *Chase* v. *City of Lowell,* 7 Gray (Mass.), 33; *Ives* v. *Hazard et al.,* 4. R. I., 14, 67 Am. Dec., 500; *Himrod Furnace Co.* v. *Cleveland & M. R. Co.,* 22 Ohio St., 451, 459; *Kearby* v. *Hopkins,* 14 Tex. Civ. App., 166, 36 S. W., 506; *Martin* v. *Roberts,*

57 Tex., 564, 568. Cases to the contrary are *Wilkinson* v. *Heavenrich,* 58 Mich., 574, 26 N. W., 139, 55 Am. Rep., 708; *Co-operative Telegraph Co.* v. *Katus,* 140 Mich., 367, 103 N. W., 814, 112 Am. St. Rep. 414; *Adams* v. *Harrington* Hotel Co., 154 Mich., 198, 117 N. W., 551, 19 L. R. A. (N. S.), 919; *Houser* v. *Hobart,* 22 Idaho, 735, 127 Pac., 997, 43 L. R. A. (N. S.), 410. See comment on the last case in note appended to it in 43 L. R. A. (N. S.), 410.

We may add that a strong analogy to cases arising under subsection 5 may be found in those of our cases which arose under that clause of subsection 4, which applies to leases for a longer period than one year. We believe it has been the uniform practice, in our State, for lessors only to sign, notwithstanding the fact that leases very often contain numerous affirmative covenants on the part of the lessee. Practically the universal opinion of the members of our bar is that such leases, signed only by the lessor, when delivered to and accepted by the lessee, are good, and enforceable against the latter although not signed by him. We would not hold differently at this late date. It has been universally considered in this State that the acceptance of such a lease, either verbally or by conduct, would complete the contract between the lessor and lessee and would make it binding and enforceable on both. It is difficult to perceive why the analogy would not be controlling in the kind of a contract

we now have before us; but, as stated, it is unnecessary to authoritatively decide the question.

The result is the decree of the chancellor is affirmed, and the cause remanded for further proceedings.