**Sam PETTY, Plaintiff-Appellee,**

v.

**ESTATE of W. V. NICHOLS,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

Dec. 2, 1977.

Certiorari Denied by Supreme Court
April 24, 1978.

Thomas E. Fox, Franklin, Ward DeWitt, Jr., Nashville, for plaintiff-appellee.

Tommy E. Doyle, Humphreys, Townsend & Doyle, Linden, for defendant-appellant.

## OPINION

SHRIVER, Presiding Judge.

This is an appeal by the estate of W. V. Nichols, deceased, from a jury verdict rendered in the Circuit Court of Perry County, awarding the appellee one-half of the estate of W. V. Nichols who died January 28, 1975 and whose will was probated in the County Court of Perry County on January 30, 1975 wherein all of his property was devised to his son, W. V. Nichols, Jr., and wife, Barbara Wright Nichols.

Appellee, Sam Petty, is the stepson of the late W. V. Nichols and the natural son of Pearl Ledbetter Petty Nichols who married W. V. Nichols after the death of her former husband, father of appellee, and she is also the natural mother of W. V. Nichols, Jr., son of the above named W. V. Nichols, deceased.

Pearl Ledbetter Petty Nichols died testate on July 14, 1968, her will being probated in the County Court of Perry County on July 15, 1968, wherein she devised and bequeathed all of her property to W. V. Nichols, Sr., for and during his lifetime, with remainder to her two sons equally, appellee, Sam Petty, and W. V. Nichols, Jr., the latter of whom was the only child of W. V. Nichols, Sr.

On July 12, 1975, appellee filed a claim against the estate of W. V. Nichols, de-

ceased, in the amount of $225,000.00, subsequently amended so as to claim in the alternative one-half of the value of the estate.

Appellant filed exceptions to the claim on several grounds, following which the cause was transferred to the Circuit Court for trial where the case came on to be heard before Judge Henry Denmark Bell and a jury on October 8, 1976. At the completion of claimant's proof, the Court sustained appellant's motion for a directed verdict as to that portion of the claim which was for services rendered, but submitted to the jury the issue as to an alleged contract of W. V. Nichols and his wife, mother of appellee, to execute mutual wills leaving the estate of the survivor in equal shares to Sam Petty and W. V. Nichols, Jr. After due deliberation, the jury found that issue in favor of Sam Petty and judgment was accordingly entered in his favor. From this judgment, the defendant perfected its appeal and has assigned errors.

—The Record—

The record herein is very unsatisfactory in several respects.

The first entry in the Transcript of the Record is a certificate of the County Court Clerk that he has turned over to the Circuit Court Clerk of Perry County, his complete file in the W. V. Nichols Estate "for a hearing in the case."

This is followed by a copy of the Will of W. V. Nichols and an Order of Probate, a claim of Sam Petty and exceptions to the claim, but there is no order of transfer to the Circuit Court for any kind of contest or hearing.

The other entries appear to be those made in the Circuit Court. There is a "Judgment," which appears to be a verdict of the jury and final decree, an order amending the claim of Petty, and an order overruling the motion for a new trial and, finally, a certificate of the Circuit Court Clerk that it is a complete transcript of the record in the Circuit Court.

We have proceeded to a consideration of the case on its merits in spite of the deficiencies and irregularities in the record above indicated and others hereinafter noted.

The suit originated in the County Court as a claim of Sam Petty for $225,000.00 against the estate of W. V. Nichols, deceased, apparently, for services rendered, but, by amendment, it included suit to recover for breach of contract to make a will leaving one-half of the estate to the claimant, and the case was tried and concluded on this theory.

—Motion—

We have before us a motion to strike the Bill of Exceptions for having been filed after the time allowed for filing it had expired.

The order overruling defendant's motion for a new trial was entered March 2, 1977. Said order provided:

"The executors respectfully excepted, prayed and were granted an appeal to the next term of the Court of Appeals sitting in Nashville, upon the condition that said appeal be perfected as required by law; and said executors were allowed sixty (60) days within which to have prepared and filed their Bill of Exceptions."

Although no motion to amend the above order is included in the Transcript of the Technical Record, and no suggestion of diminution of the record was made, we have a certified "Order Correcting Clerical Error," dated May 24th, 1977, which was transmitted by mail to the Clerk of this Court with accompanying letter of the Circuit Court Clerk, the order being as follows:

"ORDER CORRECTING CLERICAL
ERROR

This cause came on to be heard upon the motion of the Estate of W. V. Nichols, Respondents herein, to correct a clerical mistake in the Order Overruling the

Motion for a New Trial entered herein on March 2, 1977. Having reviewed said Order, the Court has independent recollection that the executors, through their attorney, requested and it was the Court's intention to allow the maximum time allowed by statute, i. e., thirty (30) days to file an appeal bond and an additional sixty (60) days to file the Bill of Exceptions; therefore pursuant to Rule 60, it is

ORDERED, CONSIDERED and ADJUDGED that the Order Overruling Motion for a New Trial entered herein on the 2nd day of March, 1977, be and the same is hereby corrected so as to read as follows:

'The executors respectfully excepted, prayed and were granted an appeal to the next term of the Court of Appeals sitting in Nashville, Tennessee, upon the condition that said appeal be perfected as required by law; and said executors were allowed an additional sixty (60) days to prepare and file their Bill of Exceptions.'

From all of which the Claimant respectfully excepted, prayed and was granted an appeal upon the condition said appeal be perfected as required by law.

Done and Ordered on the 24th day of May, 1977, and entered now for then. This the 31st day of May, 1977.

/s/ H. D. Bell
JUDGE"

While our initial impression was that the Trial Judge exceeded his authority in amending or changing his original order after the expiration of thirty days from the entry thereof, we find that this Court, Western Section, in an Opinion by Judge Charles Nearn (June, 1976) passed on almost this precise question in *Green Meadow Park, Inc. v. Am. Heritage Life Ins. Co.,* Tenn.App., 540 S.W.2d 267, approving an extension granted after 30 days had elapsed as being the correction of an error in the original order.

Following the decision in that case, we deny the motion to strike the Bill of Exceptions.

—Assignments of Error—

There are six assignments of error with numerous notes and comments which we will discuss hereinafter.

*Assignment No. I* is as follows:

"The Court erred in failing to sustain appellant's motion to dismiss because claimant failed to state a claim against the estate upon which relief can be granted."

■ It is argued that a claim where a third party beneficiary is trying to impose a contract to make mutual wills, that the only remedy available is specific performance.

Obviously, since the parties to the contract are deceased, there cannot be a personal performance of the contract; however, this does not preclude relief against the estate or determination as to proper distribution thereof.

It is further argued that the claim on its face shows that the agreement, if any, was in parol and is, therefore, in violation of the Statute of Frauds, and, further that there are no allegations concerning consideration for the making of mutual wills and that it is, therefore, unenforceable.

■ As pointed out hereinafter, under Assignment IV, a will, once in existence and afterwards destroyed, is a sufficient memorandum to satisfy the Statute of Frauds. Moreover, the execution of her will by Mrs. Nichols furnished sufficient consideration to support the agreement of Mr. Nichols in respect to his will.

We find no merit in this assignment and it is, therefore, overruled.

■ *Assignment No. III* asserts that the Court erred in overruling appellant's objections to parol testimony concerning the existence of a contract to make mutual wills as being in violation of the Statute of Frauds.

For the same reasons indicated in dealing with Assignment No. I, Assignment No. III is overruled.

*Assignment No. II* charges error in overruling appellant's motion to strike all references in appellee's pleadings concerning statements made by Mr. and Mrs. Nichols to the appellee and in overruling appellant's objection to testimony concerning statements made by the decedents.

■ It is urged by appellants that the Dead Man's Statute, T.C.A. § 24–105, was violated by references in appellee's pleadings concerning statements made by the deceased, Mr. and Mrs. Nichols, and by the introduction over appellant's objection of testimony concerning alleged statements made by them.

T.C.A. § 24–105, provides:

"In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. . . ."

A part of the evidence admitted over the objection of counsel for appellant was that of the appellee, Sam Petty, wherein he testified that his stepfather, W. V. Nichols, and his mother, Mrs. Nichols had stated in his presence during their lives that they had agreed that he and his half-brother, W. V. Nichols, Jr., were each to get one-half of all of their property and that they had prepared wills while they lived in Texas and had told other relatives that they each had willed his or her property to each other, with the remainder to go at the death of the survivor in equal shares to W. V. Nichols, Jr. and Sam Petty. He also testified that on numerous other occasions during their lives, they both made statements to the effect that their estates would be divided equally between him and W. V. Nichols, Jr. upon the death of the survivor of the two.

Appellee, in describing the situation and the statements above referred to, stated that while they were living in Big Spring, Texas, he was about to finish high school in 1936, and that he and his mother and stepfather, whom he referred to as "Dad," saying that he always called him "Dad" or "Daddy," were together. He testified:

". . . And we were sitting there, and Dad asked what I was going to do about going to college. And I said, Well, I hope to go. I said, I have some money that my father left me, and I hope to go ahead and go to college. Mother said, Son, I'm sorry to have to tell you this, but we have been in a bind on the property . . . and I had to use your money to try to save the property in Perry County.

Q. After that statement about their using the money, was there any statements made by Mr. or Mrs. Nichols?

A. They told me not to worry about it . . . that my mother and stepfather had agreed that I would get half of both places, half the entire estate.

Q. Did they say what would go with the other half?

A. Said Bill and I were to share it equally and share and share alike, that I would get half of their's too, my stepfather's." [B.E. pps. 56–57]

The appellee further testified that the day after his mother was buried, he and his stepfather and Bill (W. V. Nichols, Jr.) went to the Bank and got her Will out of the lock box, that there were two wills there together and that his stepfather said: "This is hers," and he took it and left the other one in the lock box. On questioning he stated that the other will was that of his father. He also testified that they took his mother's will to the County Judge and it was probated. He further stated that while they were in the office waiting for Judge Young to get the record and get the will recorded, that they were talking and his stepfather said: "Well, there is one thing about it, my will is exactly like your mother's." He further stated: "I don't want

any quibbling over any of this property like I had."

It is to be noted that Mrs. Nichols' will (Exhibit 1) was probated and, in fact, it left all of her property to her husband for his lifetime, with the remainder to go to W. V. Nichols, Jr. and Sam Petty in equal shares upon his death. The record also shows that a few days after the probation of Mrs. Nichols' will, Mr. Nichols obtained his will from the lock box and went to a lawyer who drafted a new will for him. Mr. W. V. Nichols, Jr., who accompanied his father to the lawyer's office, stated that he did not know what his father did with the prior will but assumed that it was destroyed and appellee testified that he had been unable to find out what had happened to Mr. Nichols Sr.'s prior will, although he made an effort to do so.

The second will of W. V. Nichols, (Ex. 2) left all of the real property to his son, W. V. Nichols, Jr., and wife.

It appears from said will that he attempted to leave the Hurricane Creek farm which had belonged to his wife, appellee's mother, as a separate estate to his son, W. V. Nichols, Jr., and wife, even though he only had a life estate in it with the remainder being vested in W. V. Nichols, Jr. and Sam Petty under the terms of her will.

It appears that the Kittrell farm which was in Mr. Nichols, Sr.'s name at the time of his death has an estimated value of $325,000.00 and that a substantial portion of the money to acquire and clear that farm came from the funds of Mrs. Nichols, mother of Sam Petty.

In addition to the testimony of appellee, there was other testimony, including that of Mary Louise Wiley, whose deposition was read and included in the record. She is a first cousin of appellee, Sam Petty, and a niece of appellee's mother. She described her relationship with the family and stated that Sam Petty and his mother lived with her family for some time after Mr. Petty died.

She stated that her Aunt Pearl (Mrs. Nichols) and her mother discussed their wills in her presence and that her aunt stated that she wanted her property and that of Mr. Nichols divided equally, share and share alike, between her two sons, Bill and Sam. She testified:

"Q. What else did she say, if you remember?

A. Well, it was just—anyway, Mother and Daddy said that they had their wills just like Aunt Pearl and Vivian. And she left him everything she had, and he left her everything he had to be divided between Sam and Bill.

.     .     .     .     .

Q. Now, let me see if I understood your statement. I believe you said that Mrs. Nichols and Mr. Nichols stated, in talking to your parents and in your presence, that they wanted—they left their property to each other, and, then, at the death of the survivor, it would be divided equally between   .   .   .   Sam and Bill?

A. Equally between them."

Responding now to the assignment charging that the above described testimony of Sam Petty was in violation of the "Dead Man's Statute," the case of *Baker v. Baker*, 24 Tenn.App. 220, 142 S.W.2d 737 (1946), deals with the question of the admissibility of evidence under said statute and, among other things, the Court held:

"The statute concerning competency of parties to testify relative to statements by or transactions with testators in proceedings by or against an executor must be strictly construed as against exclusion of testimony and in favor of its admission.

"The statute concerning competency of parties to testify relative to statements by or transactions with a testator in proceedings by or against an executor does not contemplate a proceeding the result

of which can neither increase nor diminish assets of an estate, but concerns only the manner in which the assets will be distributed."

In *Justine et al. v. Henley et al.*, 27 Tenn.App. 403, 181 S.W.2d 632 (1944), the Court held:

"An action by decedent's heirs against his widow involving ownership of property as between the decedent and the widow was not an 'action by or against executor or administrator' within the statute prohibiting either party to such action from testifying against the other as to transaction with or statement by decedent, and it was not error to admit the testimony of the widow."

It must be remembered that, in reference to the "Dead Man's Statute," it cannot apply to statements attributed to Mrs. Nichols since her will and her estate are not involved in this suit.

Under the authorities and for the reasons indicated, Assignment No. II is overruled.

■ *Assignment No. IV* charges error in refusing to direct a verdict, as requested by appellant, at the end of appellee's proof and renewed at the conclusion of all of the proof on the ground that an alleged contract to make mutual wills cannot be established by parol evidence.

It is to be pointed out that the contract to make mutual wills sought to be enforced in the case at bar does not rest entirely on parol evidence. The first will of W. B. Nichols, Sr., as indicated by his statements to others, considered with the will of Mrs. Nichols which contained the provisions insisted upon by appellee and Mr. Nichols' statement that his will was identical with hers, together with other circumstances shown, constitutes evidence to support the contention of appellee.

In *Harris v. Morgan*, 157 Tenn. 140, 7 S.W.2d 53 (1928), our Supreme Court held that identical wills of four brothers and sisters, when viewed together in the light of the situation and circumstances of the parties at the time they were written, sufficed as the required note or memorandum of their contract to make mutual wills even though they did not recite that they were made in consideration for each other or refer in any way to an agreement to make mutual wills.

It is to be noted that in *Harris*, supra, the Court emphasized that the situation and circumstances of the parties may be examined to aid in arriving at the meaning of what they had written and that parol evidence was admissible to show that the wills were made in consideration of each other.

In *Harris*, supra, the Court quoted with approval from a decision of an Illinois Court dealing with a situation where two persons made wills, each devising his or her property to the other. The Court said:

". . . Where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife and where they have a common interest in the welfare of the devisees. . . . If evidence of a mutual compact is necessary in such case, that evidence is afforded by what the parties did. . . . The fact that they made such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner."

The Opinion in *Harris*, further said:

"The four wills bearing the same date, each disposing of property to the survivors, and with the direction that such property be divided at the death of the survivor among the same persons, negative any conclusion but that they were executed pursuant to a joint compact or agreement, and that each was executed in consideration of the execution of the

other three. No parol evidence would, therefore, be necessary to establish the fact of the compact or agreement. 'The statute of frauds is, after all, merely a statute declaring that a certain kind of evidence is required to support an action in certain cases.' *Huffine v. McCampbell*, 149 Tenn. 47, 48, 257 S.W. 80. We conclude, therefore, that the written will of each of the three defendants, considered in connection with the other three wills, constitutes written evidence of the contract between the parties, so that the contract does not rest entirely in parol. *Huffine v. McCampbell*, supra; *Brewer v. Glass Casket Co.*, 139 Tenn. 97, 113, 201 S.W. 145."

As was said in Corbin on Contracts, pp. 486–52, 1952 Ed.:

"Enforcement of a contract is not prevented by the fact that the written document has been lost or destroyed; its contents may then be proved by oral testimony."

In 37 C.J.S. Statute of Frauds § 281, p. 809 it is said:

"The statute of frauds has not affected the best evidence rule as to proof of a writing . . . . Accordingly, if a writing evidencing the contract is lost or destroyed, its execution, its subsequent loss or destruction, as well as its contents may be shown by parol . . . ."

For the reasons indicated, Assignment No. IV is overruled.

*Assignment No. V* charges error in refusing to charge the jury on certain special instructions tendered by the appellant.

■ While the special instructions are included in the brief and argument of counsel, we do not find them in the Bill of Exceptions and it does not appear that said special requests were offered at the conclusion of the regular charge. The record only discloses that the Trial Judge, after examining certain special requests and, apparently, prior to his delivering the main charge,

stated that he would not charge these special requests which are not included in the record.

It results that Assignment No. V is overruled.

*Assignment No. VI* is as follows:

"The Court erred in its charge to the jury resulting in a general verdict for the claimant-appellee rather than requiring the jury to make the following specific findings of fact:

(1) Was there a contract to make mutual wills?

(2) If so, what were the terms and subject matter of such an agreement?

(3) Were wills executed pursuant to such a contract?

(4) The contents of W. V. Nichols' prior will, i. e., were the contents of W. V. Nichols' prior will as alleged by the appellee?"

■ The action of the Court with respect to requiring the jury to make special and specific findings of fact is a matter that addresses itself to the sound discretion of the Trial Judge and we find no abuses of discretion in the action of the Trial Judge complained of in said assignment.

It results that Assignment No. VI is overruled.

The single assignment filed by the appellee was disposed of in the action dealing with the Bill of Exceptions.

■ We are impressed that there is ample evidence to support the verdict and judgment; therefore, all assignments having been overruled, it results that the judgment of the Trial Court is affirmed.

AFFIRMED.

TODD and DROWOTA, JJ., concur.