## IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

FILED

July 13, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |
|---|---|
| INTEGON INDEMNITY CORPORATION, | Shelby County Chancery Court No. 108770-1 R.D. |
| Plaintiff/Appellant. | |
| VS. | C.A. No. 02A01-9812-CH-00382 |
| SANDRA FLANAGAN and SHON FLANAGAN, | |
| Defendants/Appellees. | |

From the Chancery Court of Shelby County at Memphis.
**Honorable Walter L. Evans, Chancellor**

**Michael D. Herrin**,
LESS, GETZ & LIPMAN, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**Jeffrey Jones**, Memphis, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**VACATED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiff Integon Indemnity Corporation appeals the trial court's judgment which

dismissed Integon's complaint for declaratory relief and which ruled that Defendants/Appellees Sandra and Shon Flanagan were insured persons under the uninsured motorist provisions of the automobile liability insurance policy issued by Integon to the Flanagans. We vacate the trial court's judgment based upon our conclusion that the court erred in failing to conduct a trial to determine the dispositive issue in this case.

In July 1994, Sandra and Shon Flanagan were involved in a motor vehicle accident on Jackson Avenue in Memphis. At the time of the accident, Shon Flanagan was operating a 1978 Honda Goldwing motorcycle and Sandra Flanagan was a passenger on the vehicle. The Flanagans subsequently filed a lawsuit against both the owner and the operator of the automobile with which they collided. In the Flanagans' complaint filed in that action, Sandra Flanagan sought to recover the sum of $250,000 for her personal injuries. Shon Flanagan sought to recover the sum of $50,000 for his loss of consortium claim and for "property damage to his vehicle." The Flanagans caused a copy of the complaint and a summons to be served on their uninsured motorist insurance carrier, Integon Indemnity Corporation.

Integon then filed this complaint for declaratory relief against the Flanagans in which it sought a declaration that the Flanagans were not entitled to uninsured motorist coverage under the terms of Integon's policy. In support of its complaint, Integon cited the following policy exclusion:

> A. We do not provide Uninsured Motorists Coverage for **property damage** or bodily injury sustained by any person:
>
> (1) While **occupying**, or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. . . .

The policy issued by Integon insured only the Flanagans' 1976 Ford automobile. Citing the foregoing policy exclusion, Integon contended that the Flanagans were not entitled to uninsured motorist coverage under the terms of the policy because Shon Flanagan owned the 1978 Honda Goldwing motorcycle involved in the subject accident and the motorcycle was not insured for coverage under the policy.

During opening statements at the October 1998 trial, Integon's counsel stated his

intention to present the following evidence of Shon Flanagan's ownership of the motorcycle. Integon planned to introduce the videotaped deposition of Charlotte Tackash, who would testify that she sold the motorcycle to Shon Flanagan for the sum of $500. Tackash's husband owned the motorcycle, but he had executed a power of attorney which authorized Tackash to sell the motorcycle. The subject accident occurred within one or two days after the sale of the motorcycle. Although Shon Flanagan subsequently denied ownership of the motorcycle, the motorcycle remained in his possession at the time of trial.

The Flanagans raised two defenses to Integon's complaint for declaratory relief. Asserting that Shon Flanagan was merely test-driving the vehicle when the accident occurred, the Flanagans first denied that Charlotte Tackash sold the motorcycle to Shon Flanagan. Alternatively, the Flanagans challenged Charlotte Tackash's authority to sell her husband's motorcycle.

Upon questioning by the trial court, Integon's counsel stipulated that he would be unable to produce any written documents verifying the existence of the power of attorney executed by Tackash's husband. He explained that Tackash's deposition testimony would indicate that she could not locate the written power of attorney and that she had not seen it since the Tackashes moved. Integon's counsel also stipulated that, at the time of the accident, title to the motorcycle remained in the name of Tackash's husband.

Although Integon's counsel stipulated to the foregoing facts during opening statements, he objected to the trial court deciding the case based upon the stipulations alone, and he asserted his right to present evidence:

> MR. FRICK [INTEGON'S COUNSEL]: Is the Court telling me I can't show that [a videotape of Charlotte Tackash's deposition], put that into evidence? The problem that I'm concerned about is that I have evidence that I'm not being allowed to put in.
>
> THE COURT: Well, what evidence are you not being allowed to put in?
>
> MR. FRICK: [Charlotte Tackash's] videotaped deposition testimony.
>
> THE COURT: But you've summarized the strong points of her testimony. Is there anything which you have not stated that her

video would disclose that you wish to advise the Court?

MR. FRICK: If Your Honor please, it's a 70-page deposition and I can't -- with all due respect to the Court, it's unfair to ask me to stipulate to all of the things that might be pertinent in that deposition.

Despite this objection, the trial court proceeded to rule upon the merits of the case based upon counsels' opening statements. In dismissing Integon's complaint, the trial court ruled that, inasmuch as Integon could not produce any writing establishing the contents of the power of attorney executed by Charlotte Tackash's husband, Integon was unable to meet its burden of proving that Charlotte Tackash had the authority to sell the motorcycle to Shon Flanagan. Accordingly, the trial court ruled that the Flanagans were insured persons under the terms of Integon's policy and that they were entitled to uninsured motorist coverage.

We conclude that the trial court erred in determining the coverage issue in this case without conducting a trial. Our supreme court has held that "the trial judges of this State are not authorized to order the involuntary dismissal of an action at trial upon the sole basis of the opening statements of counsel." *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn. 1978). The court gave the following explanation for this holding:

> Such a practice was not recognized in this State prior to the adoption of the *Tennessee Rules of Civil Procedure* and we find nothing in those rules to countenance such a practice now. The applicable rule is Rule 41.02(2), governing involuntary dismissals at trial, which provides:
>
>> "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; in the event judgment is rendered at the close of plaintiff's evidence, the court shall make findings of fact if requested in writing within three days after the announcement of the court's decision."
>
> Clearly, this rule contemplates that the plaintiff's evidence shall be heard and evaluated by the court prior to an involuntary dismissal order at trial. We note also that Rule 50.01 governing the granting of a directed verdict in a jury trial also limits the power of the court to

do so to that point in the trial " . . . at the close of the evidence offered by an opposing party or at the close of the case."

Of critical importance here is the nature of opening statements. They are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove. Such statements do not amount to stipulations and certainly are not a substitute for the pleadings or for evidence. *See* 75 Am. Jur. 2d *Trials* § 202 (1974). It is easy to see that an involuntary dismissal upon the basis of the opening statements of counsel alone may effectively deny the litigants the opportunity to be heard or to fully present the facts and evidence in the case. For this reason, we are unwilling to expand the provisions of Rule 41.02 to authorize trial judges to order involuntary dismissals upon opening statements alone.

*Harris*, 574 S.W.2d at 731-32; *accord J.C. Bradford & Co. v. Southern Realty Partners*, No. 02A01-9801-CH-00006, 1998 WL 855465, at *3 (Tenn. App. Dec. 10, 1998).

In urging this court to affirm the trial court's judgment, the Flanagans contend that the trial court properly ruled on the dispositive issue in this case based upon the stipulations made by Integon's counsel during opening statements. This court rejected a similar argument in the recent decision of *J.C. Bradford & Co. v. Southern Realty Partners*, No. 02A01-9801-CH-00006, 1998 WL 855465 (Tenn. App. Dec. 10, 1998). There, as in the present case, the appellant agreed to certain stipulations during opening statements, but the appellant also asserted its right to present deposition testimony and documentary evidence. *J.C. Bradford*, 1998 WL 855465, at *4. In vacating the trial court's judgment, we explained that the *J.C. Bradford* case illustrated

that the Rules of Civil Procedure should be followed and cases tried in the usual and proper manner. As our Supreme Court said in *Harris*, the opening statements should be confined to outlining in a general way the nature of the case and the facts each party intends to prove. The case should then proceed as an evidentiary hearing in order for the trial court to make determinations including, of course, the credibility of witnesses. While oral stipulations are binding upon the parties and may be the basis of a ruling by the court, *Department of Highways v. Urban Estates, Inc.*, 225 Tenn. 193, 465 S.W.2d 357, 360 ([Tenn.] 1971), there must be a clear understanding of what the stipulations are.

*J.C. Bradford*, 1998 WL 855465, at *3.

The Flanagans further insist that the trial court's judgment should be affirmed

because, regardless of what evidence Integon might have introduced at trial, Integon's counsel conceded that he would be unable to produce the written power of attorney evidencing Charlotte Tackash's authority to sell the motorcycle. In dismissing Integon's complaint for declaratory relief, the trial court ruled that Integon's failure to produce the written power of attorney was fatal to Integon's claim that Charlotte Tackash had the authority to sell the motorcycle to Shon Flanagan.

The trial court apparently based its ruling upon the best evidence rule. The best evidence rule generally requires a party to introduce an original writing or a duplicate if the party seeks to prove the contents of the writing. *See* T.R.E. 1002, 1003. As set forth in the Tennessee Rules of Evidence, however, the best evidence rule is a rule of preference rather than exclusion. ***State ex rel. Glover v. Osteen***, No. 01A01-9304-CV-00244, 1995 WL 546958, at *3 (Tenn. App. Sept. 15, 1995). The rule "does not exclude evidence but rather requires the introduction of the best available form of the evidence." ***Id***. The underlying theory of the rule is that "only the best or most accurate proof of written or similar evidence should be admitted, to the exclusion of inferior sources of the same proof, absent some extraordinary justification for the introduction of secondary evidence." Neil P. Cohen et al., ***Tennessee Law of Evidence*** § 1001.0, at 496 (2d ed. 1990).

In keeping with this theory, the Tennessee Rules of Evidence set forth four exceptions to the best evidence rule. Rule 1004 provides that the proponent of a written document need not introduce the original of the document in four circumstances:

> (1)    Originals Lost or Destroyed. -- All originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith; or
>
> (2)    Original Not Obtainable. -- No original can be obtained by any available judicial process or procedure; or
>
> (3)    Original in Possession of Opponent. -- At a time when an original was under the control of the party against whom offered, that party was put on notice by the pleadings or otherwise that the contents would be a subject of proof at the hearing but does not produce the original at the hearing; or
>
> (4)    Collateral Matters. -- The writing . . . is not closely related to a controlling issue.

T.R.E. 1004. If one of these exceptions applies, then the proponent of the document may offer oral

testimony to prove the contents of the writing. *See State ex rel. Glover v. Osteen*, 1995 WL 546958, at \*2; *see also Petty v. Estate of Nichols*, 569 S.W.2d 840, 847 (Tenn. App. 1977) (indicating that party may use oral testimony to prove contents of lost or destroyed document).

We conclude that the trial court erred in deciding this case based upon Integon's failure to produce the written power of attorney. According to the opening statements of Integon's counsel, Charlotte Tackash's testimony would have revealed that an exception to the best evidence rule applied because the original power of attorney was lost. Integon's counsel made the following representations to the trial court:

> I believe her [Charlotte Tackash's] testimony is -- you might have a better recollection of this, but they had, I believe, moved from the Memphis/Millington area up to Pennsylvania. This was after this transfer had taken place, and I believe she indicated that she had seen it some time in the course of that move, but since that move had not seen it. I may be incorrectly phrasing her testimony.
>
> . . . .
>
> . . . I have -- the deposition's here, but my recollection is Mrs. Tackash in her subpoena was asked to bring documents relative to the sale, and I believe her testimony is that the Power of Attorney could not be located.

If introduced into evidence, the foregoing testimony would have demonstrated that Charlotte Tackash lost the original power of attorney and that such loss did not result from any bad faith on the part of Tackash or Integon. Accordingly, the proffered testimony would have been competent to establish that Tackash's husband executed a power of attorney authorizing Tackash to sell the motorcycle. *See State ex rel. Glover v. Osteen*, 1995 WL 546958, at \*3.

In any event, we are not convinced that the written power of attorney was critical to Integon's complaint for declaratory relief because the record contains other proffered evidence which supported Integon's claim that Charlotte Tackash had the authority to sell the motorcycle to Shon Flanagan. During her videotaped deposition, Tackash testified that her husband executed a general power of attorney before traveling overseas on an assignment with the United States Navy. Tackash also testified, however, that she and her husband had a conversation before his departure during which her husband specifically instructed her to sell the 1978 Honda Goldwing motorcycle in his

absence if she needed the money.

Shon Flanagan's testimony tended to support Integon's claim that Charlotte Tackash had the authority to sell the motorcycle. In his deposition taken almost three years after the accident, Shon Flanagan admitted that the motorcycle remained in his possession and that the Tackashes had not sought its return. Flanagan further admitted filing a lawsuit against the owner and the driver of the other automobile involved in the accident in which he sought compensation for property damage to "his vehicle," *i.e.* the motorcycle.

In our view, the present case illustrates why trial courts generally should not decide cases based upon the parties' opening statements. If this case had proceeded to an evidentiary hearing, the trial court then could have made the necessary rulings on the application of the best evidence rule, possible exceptions to the rule, and any other evidentiary issues that might have arisen during the trial. The trial court likewise could have determined the credibility of the central witnesses in this case, including Charlotte Tackash and Shon Flanagan. We believe that the trial court prematurely decided this case without allowing the parties to develop a record upon which the court properly could have determined these issues.

The trial court's judgment is vacated, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Flanagans, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)